Slip Op. 15-123

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| BAODING MANTONG FINE CHEMISTRY CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES <br><br> Defendant, <br><br> and <br><br> GEO SPECIALTY CHEMICALS, INC. <br><br> Defendant-Intervenor. | Before: Timothy C. Stanceu, Chief Judge <br><br> Court No. 12-00362 |

OPINION AND ORDER

[Remanding for reconsideration a final determination of the International Trade Administration, U.S. Department of Commerce, concluding an administrative review of an antidumping duty order on glycine from China]

Date: November 3, 2015

*Ronald M. Wisla*, Kutak Rock LLP, of Washington, D.C., argued for plaintiff Baoding Mantong Fine Chemistry Co., Ltd. With him on the brief was *Lizbeth R. Levinson*.

*Antonia R. Soares*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington D.C., argued for defendant United States. With her on the brief were *Stuart F. Delery*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Reginald T. Blades, Jr.*, Assistant Director. Of counsel on the brief was *Jessica Forton*, Attorney-International, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce.

*David M. Schwartz*, Thompson Hine LLP, of Washington D.C., argued for defendant-intervenor GEO Specialty Chemicals Inc.

Stanceu, Chief Judge: Plaintiff Baoding Mantong Fine Chemistry Co., Ltd. ("Baoding")

contests the final determination ("Final Results") that the International Trade Administration of

the U.S. Department of Commerce ("Commerce" or the "Department") issued to conclude an administrative review of an antidumping duty order on glycine from the People's Republic of China (the "subject merchandise").[1] *See Glycine from the People's Republic of China: Final Results of Antidumping Duty Administrative Review*, 77 Fed. Reg. 64,100 (Int'l Trade Admin. Oct. 18, 2012) ("*Final Results*").  In the review, Commerce assigned to Baoding, a Chinese producer and exporter of glycine and a respondent in the administrative review proceeding conducted by Commerce, a weighted average dumping margin of 453.79%.  *Id*. at 64,101. Defendant-intervenor GEO, also a party to the administrative proceeding, is a domestic producer of glycine.

Before the court is plaintiff's Motion for Judgment on the Agency Record.  Pl.'s Mot. for J. on the Agency R. (July 22, 2013), ECF No. 30 ("Pl.'s Mot."); Mem. of P. & A. in Supp. of Pl.'s R. 56.2 Mot. for J. on the Agency R. (July 22, 2013), ECF No. 30-1 ("Pl.'s Br.").  Plaintiff contends that the 453.79% dumping margin Commerce calculated for Baoding is impermissible because it defies commercial and economic reality.  Pl.'s Br. 10, 13.  Plaintiff also challenges certain "surrogate values" that Commerce applied to various factors of production when calculating the normal value of Baoding's subject merchandise.  Pl.'s Br. 11-34.  Finally, plaintiff challenges the surrogate financial ratios Commerce used to value Baoding's factory overhead, selling, general and administrative (SG&A) expenses, and profit (collectively, the "financial ratios") for the normal value calculation.  Pl.'s Br. 34-39.

---

[1] Glycine "is a freeflowing crystalline material, like salt or sugar" that "is produced at varying levels of purity and is used as a sweetener/taste enhancer, a buffering agent, reabsorbable amino acid, chemical intermediate, and a metal complexing agent." *Antidumping Duty Order: Glycine From the People's Republic of China*, 60 Fed. Reg. 16,116, 16,116 (Int'l Trade Admin. Mar. 29, 1995).

Also before the court is defendant's Motion for a Partial Voluntary Remand, which seeks a voluntary remand to allow Commerce to reconsider the financial ratios it used in determining the normal value of Baoding's subject merchandise. Def.'s Mot. for a Voluntary Remand 1 (Aug. 6, 2014), ECF No. 64 ("Def.'s Mot. for Voluntary Remand"). Both Baoding and defendant-intervenor GEO Specialty Chemicals, Inc. ("GEO") oppose defendant's motion. *Id.* at 1-2.

The court rules that Commerce failed to fulfill its obligation to determine the most accurate margin possible when it assigned Baoding a weighted average dumping margin of 453.79%, which on the record of this case was not realistic in any commercial or economic sense and punitive in its effect. The court directs Commerce to determine a new margin for Baoding that is the most accurate margin possible, that is grounded in the commercial and economic reality surrounding the production and sale of Baoding's subject merchandise, and that is fair, equitable, and not so large as to be punitive.

## I. BACKGROUND

### A. The Administrative Review Proceedings before Commerce

Commerce issued the antidumping duty order on glycine from China (the "Order") in 1995. *Antidumping Duty Order: Glycine From the People's Republic of China*, 60 Fed. Reg. 16,116 (Int'l Trade Admin. Mar. 29, 1995). On April 27, 2011, Commerce initiated the administrative review at issue in this case, for which the period of review ("POR") was March 1, 2010 through February 28, 2011, and in which Baoding was the sole respondent.[2] *See*

---

[2] The review was only the fifth periodic review of the antidumping duty order conducted by Commerce; periodic reviews were not conducted for certain years following issuance of the order. For the 2010-2011 review, GEO initially requested that Commerce review twenty-nine other Chinese companies but withdrew its request as to those other companies. *See Glycine* (continued…)

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 76 Fed. Reg. 23,545

(Int'l Trade Admin. Apr. 27, 2011).

On April 11, 2012, Commerce published the preliminary results of the review

("Preliminary Results"), in which it determined a preliminary dumping margin of zero for

Baoding. *Glycine From the People's Republic of China: Preliminary Results of Antidumping*

*Duty Administrative Review and Partial Rescission of Antidumping Duty Administrative Review*,

77 Fed. Reg. 21,738, 21,743 (Int'l Trade Admin. Apr. 11, 2012) ("*Prelim. Results*"). In response

to an allegation that Commerce made a currency conversion error in the Preliminary Results,

Commerce notified the parties that it was revising the Preliminary Results and adjusting

Baoding's antidumping margin from zero to 457.74% ("Revised Preliminary Results").[3] *Letter*

*to File Concerning Revision to Certain Surrogate Valuations & the Prelim.-Margin Calculation*

*Program for Baoding* 2 (June 27, 2012) (Admin.R.Doc. No. 84) ("*Revisions to the Prelim.*

*Results*"). Commerce explained that "correction of this error has a significant impact on

Baoding Mantong's dumping margin." *Issues & Dec. Mem. for the Final Results in the Admin.*

(continued…)
*From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review and Partial Rescission of Antidumping Duty Administrative Review*, 77 Fed. Reg. 21,738, 21,739 (Int'l Trade Admin. Apr. 11, 2012) ("*Prelim. Results*").

[3] Following the Department's issuance of the Preliminary Results, GEO submitted a case brief arguing that Commerce made a currency conversion error by extracting Global Trade Atlas ("GTA") import data, which Commerce used in the surrogate value calculations, in Indian rupees rather than Indonesian rupiahs. *See GEO Specialty Chem.'s Case Br.* 13 (May 11, 2012) (Admin.R.Doc. Nos. 75-76) ("*GEO Case Br.*"). In response, Commerce examined its source data and found that the GTA data had been reported in U.S. dollars and that, therefore, no currency conversion was necessary. *Letter re: Revision to Certain Surrogate Valuations & the Prelim.-Margin Calculation Program for Baoding* 2 (June 27, 2012) (Admin.R.Doc. No. 84); *Issues & Dec. Mem. for the Final Results in the Admin. Review of Glycine from the People's Republic of China* 2 (Oct. 9, 2012), A-570-836, (Admin.R.Doc. No. 127), *available at* http://enforcement.trade.gov/frn/summary/PRC/2012-25595-1.pdf (last visited Oct. 29, 2015) ("*Decision Mem.*").

*Review of Glycine from the People's Republic of China* 29 (Oct. 9, 2012), A-570-836,

(Admin.R.Doc. No. 127), *available at* http://enforcement.trade.gov/frn/summary/PRC/2012-

25595-1.pdf (last visited Oct. 29, 2015) ("*Decision Mem.*").

On October 12, 2012, Commerce issued the Final Results and an accompanying Issues &

Decision Memorandum, determining a final margin for Baoding of 453.79%.[4] *See Final Results*,

77 Fed. Reg. at 64,100; *Decision Mem.* 1.

### B. Proceedings before the Court of International Trade

Baoding filed its summons on November 16, 2012 and its complaint on

December 7, 2012. Summons, ECF No. 1; Compl., ECF No. 7. It followed with its Motion for

Judgment on the Agency Record on July 22, 2013, and defendant and defendant-intervenor filed

oppositions to plaintiff's motion on January 15, 2014. Mot. for J. on the Agency R., ECF No. 30

("Pl.'s Mot."); Def.'s Resp. to Pl.'s R. 56.2 Mot. for J. upon the Agency R., ECF No. 46 ("Def.'s

Opp'n); Def.-Intervenor's Resp. Br. in Opp'n to Pl. Baoding Mantong Fine Chem. Co. Ltd.'s

R. 56.2 Mot. for J. upon the Agency Rec., ECF No. 45 ("Def.-intervenor's Opp'n"). Plaintiff

filed a reply brief on March 10, 2014. Pl.'s Reply Br., ECF No. 57 ("Pl.'s Reply"). The court

held oral argument on July 23, 2014.

---

[4] The minor change in calculation from the Revised Preliminary Results to the Final
Results concerned Baoding's international freight expenses on Baoding's constructed export
sales. *Glycine from the People's Republic of China: Final Results of Antidumping Duty
Administrative Review*, 77 Fed. Reg. 64,100, 64,101 (Int'l Trade Admin. Oct. 18, 2012) ("*Final
Results*"). After the Preliminary Results, Commerce asked that Baoding provide additional
information concerning those expenses, and when the company did not respond within the
provided deadline, Commerce applied surrogate freight expenses to construct export price sales
for which freight services may have been provided by a nonmarket economy carrier. *Id.*
Plaintiff does not challenge the Department's determination as to Baoding's international freight
expenses.

Following oral argument, defendant filed a motion for partial voluntary remand of the case, Def.'s Mot. for Voluntary Remand, which both defendant-intervenor and plaintiff opposed, Def.-Intervenor's Resp. in Opp'n to Def.'s Mot. for a Voluntary Remand (Aug. 25, 2014), ECF No. 65 ("GEO Opp'n to Voluntary Remand"); Pl.'s Opp'n to Def.'s Mot. for a Voluntary Remand (Aug. 25, 2014), ECF No. 66. Defendant then filed a motion for leave to file a reply to plaintiff's opposition to a voluntary remand. Def.'s Mot. for Leave to Reply to Pl.'s Resp. to Def.'s Mot. for Voluntary Remand (Aug. 27, 2014), ECF No. 67.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

The court exercises jurisdiction under section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c), pursuant to which the court reviews actions commenced under section 516A of the Tariff Act of 1930 (the "Tariff Act"), *as amended*, 19 U.S.C. § 1516a, including an action contesting a final determination that Commerce issues to conclude an antidumping administrative review.[5] In reviewing a final determination, the court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law . . . ." 19 U.S.C. § 1516a(b)(1)(B)(i).

### B. The Court Remands the Final Results for Redetermination of the 453.79% Margin, which Does Not Conform to Baoding's Commercial Reality and Fails to Fulfill the Department's Fundamental Responsibilities under the Statute

In contesting the Final Results, plaintiff makes various specific objections to the way in which Commerce calculated its margin but also argues generally that "[e]ven where Commerce

---

[5] All citations to the United States Code herein are to the 2006 edition and all citations to the Code of Federal Regulations are to the 2011 edition.

has acted in conformity with its statutory and regulatory obligations, the resulting dumping margin must be examined for its accuracy and fairness." Pl.'s Br. 3 (citing *NTN Bearing Corp. v. United States*, 74 F.3d 1204 (Fed. Cir. 1995)). Baoding submits that the 453.79% weighted average dumping margin Commerce assigned to it "defies commercial and economic reality." Pl.'s Br. 13. The court agrees.

In conducting a periodic administrative review of an antidumping duty order, Commerce is required to determine "the normal value and export price (or constructed export price) of each entry of the subject merchandise" and "the dumping margin for each such entry." 19 U.S.C. § 1675(a)(2)(A). A "dumping margin" is "the amount by which the normal value exceeds the export price or constructed export price of the subject merchandise," 19 U.S.C. § 1677(35)(A), and a "weighted average dumping margin" is "the percentage determined by dividing the aggregate dumping margins determined for a specific exporter or producer by the aggregate export prices and constructed export prices of such exporter or producer," *id*. § 1677(35)(B).

Antidumping duties are remedial, not punitive, measures. Their purpose is "prevent[ing] foreign manufacturers from injuring domestic industries by selling their products in the United States at less than 'fair value,' *i.e.*, at prices below the prices the foreign manufacturers charge for the same products in their home markets." *Torrington Co. v. United States*, 68 F.3d 1347, 1352 (Fed. Cir. 1995); *Agro Dutch Indus. Ltd. v. United States*, 508 F.3d 1024, 1027 (Fed. Cir. 2007) ("The purpose of the antidumping statute is to prevent foreign goods from being sold at unfairly low prices in the United States to the injury of existing or potential United States producers.").

The Court of Appeals for the Federal Circuit ("Court of Appeals") has emphasized repeatedly that in administering the antidumping statute, Commerce must determine margins as

accurately as possible. *Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States*,

716 F.3d 1370, 1379 (Fed. Cir. 2013) ("*Bestpak*") ("An overriding purpose of Commerce's

administration of antidumping laws is to calculate dumping margins as accurately as possible.");

*Shakeproof Assembly Components, Div. of Illinois Tool Works, Inc. v. United States*,

268 F.3d 1376, 1382 (Fed. Cir. 2001) ("*Shakeproof*"); *Lasko Metal Products, Inc. v. United

States*, 43 F.3d 1442, 1446 (Fed. Cir. 1994) ("*Lasko*") (citing *Rhone Poulenc, Inc. v. United

States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990)) ("*Rhone Poulenc*"). Commerce also has an

obligation to calculate antidumping duties in a way that is fair and equitable. *Koyo Seiko Co.,

Ltd. v. United States*, 36 F.3d 1565, 1573 (Fed. Cir. 1994) ("We begin by noting that one of the

purposes of the antidumping laws is to calculate antidumping duties on a fair and equitable

basis.").

While normal value ordinarily is based on the price at which merchandise comparable to

the subject merchandise (the "foreign like product") is sold in the exporter's home market or

another comparison market, *see* 19 U.S.C. § 1677b(a)(1), Commerce uses a different method of

determining normal value where the subject merchandise is produced in a country considered to

be a nonmarket economy country, such as China.[6] Here, Commerce determined the normal

value of Baoding's subject merchandise according to 19 U.S.C. § 1677b(c)(1), which provides

for the calculation of the normal value of subject merchandise from a nonmarket economy

country "on the basis of the value of the factors of production utilized in producing the

merchandise and to which shall be added an amount for general expenses and profit plus the cost

---

[6] A "nonmarket economy country" is defined in 19 U.S.C. § 1677(18) as "any foreign country that the administering authority determines does not operate on market principles of cost or pricing structures, so that sales of merchandise in such country do not reflect the fair value of the merchandise."

of containers, coverings, and other expenses." The "factors of production utilized in producing merchandise include, but are not limited to—(A) hours of labor required, (B) quantities of raw materials employed, (C) amounts of energy and other utilities consumed, and (D) representative capital cost, including depreciation." 19 U.S.C. § 1677b(c)(3).

Where, as here, Commerce is determining the normal value of subject merchandise according to specialized procedures applicable to goods produced in nonmarket economies, Commerce is no less obligated to determine margins as accurately as possible, and it is no less obligated to determine, fairly and equitably, margins that are remedial and not punitive. Congress directed generally that "the valuation of the factors of production shall be based on the *best available information* regarding the values of such factors in a market economy country or countries considered to be appropriate by the administering authority." 19 U.S.C. § 1677b(c)(1) (emphasis added). Although calculating normal value "for a producer in a nonmarket economy country is difficult and necessarily imprecise," the method used by Commerce still must fall within "the limits of permissible approximation." *Sigma Corp. v. United States*, 117 F.3d 1401, 1408 (Fed. Cir. 1997). Here, Commerce fell far short of this obligation: the assignment of so prohibitive a dumping margin as 453.79% as a remedial measure is difficult to comprehend from a commercial or economic standpoint.[7] To take an extremely simplified example of the statutory formula (one that does not require calculation of a weighted average from multiple sales), a foreign exporter assigned a percentage dumping margin of 453.79% on a

---

[7] When Commerce has assigned relatively large antidumping duty margins, typically the recipients were uncooperative respondents and the margins were based principally or entirely on "facts otherwise available" and an "adverse inference" pursuant to section 776 of the Tariff Act, 19 U.S.C. § 1677e. That situation did not occur in the review under consideration here. Commerce did not find that Baoding was an uncooperative respondent, and the 453.79% margin is an actual calculated margin, not one Commerce assigned based on an adverse inference.

good with a normal value of $100 would have had to have sold the good at an export price, or constructed export price, of approximately $18.06 (i.e., in rounded numbers, the dumping margin would be $81.94 and the percentage dumping margin would be $81.94 divided by $18.06, or 453.71%.).

Also, Congress expressly allowed for the possibility that adequate surrogate value information might be unavailable for the purpose of constructing normal value according to the specialized procedures involving valuation of factors of production. Congress directed that if Commerce finds that the "available information is inadequate" for that purpose, Commerce "shall determine the normal value on the basis of the price at which merchandise that is— (A) comparable to the subject merchandise, and (B) produced in one or more market economy countries that are at a level of economic development comparable to that of the nonmarket economy country, is sold in other countries, including the United States." *Id*. § 1677b(c)(2). In the subject review, Commerce, even though arriving at a margin that defies reality, did not find that the available surrogate value information was inadequate for use in determining the normal value of Baoding's subject merchandise.

Regarding the enormity of the margin assigned to it, Baoding argues that if the 453.79% margin "reflected commercial reality, Baoding would have suffered huge operating losses during the period of review."[8] Pl.'s Br. 13; *see also Baoding Submission of Surrogate Value*

---

[8] Plaintiff states that "[i]n the 2007-2008 review, Baoding's gross U.S. sales prices were in the $2,000 - $3,000 per ton range" and that "during the current period of review, Baoding's CEP [constructed export price] sales ranged between $4,100 and $4,500 per metric ton." Pl.'s Br. 12-13. The court is not able to conclude that Baoding's statement regarding its gross U.S. sales prices during the 2007-2008 review is grounded in a reference to the administrative record of the review at issue in this case and therefore has disregarded this statement in reaching the decision to order Commerce to calculate Baoding's margin anew. Baoding also states that after experiencing difficulty selling glycine in the United States under the 50.20% margin it was (continued…)

*Information & Comment* 2 (July 16, 2012) (Admin.R.Doc. Nos. 95-121) ("*Baoding's*

*July 16, 2012 Comments*").  Baoding reported during the administrative proceeding that it did not

suffer any financial loss on export sales during the POR.[9]  Pl.'s Br. 13 (citing *Baoding Section A*

*Resp.* A-9).  The normal value Commerce calculated for Baoding's subject merchandise—which

based on the margin would have had to have been between five and six times the U.S. price—

cannot be described as falling within "the limits of permissible approximation."  *Sigma Corp.*,

117 F.3d at 1408.  In short, the record lacks substantial evidence to support a finding that the

453.79% margin has any relationship to Baoding's commercial reality, and the record evidence

of Baoding's profitability is contrary to any such finding.

---

(continued…)

assigned in the 2006-2007 review and the 37.18% margin it was assigned in the 2007-2008 review, it did not sell glycine to the United States during the 2009-2010 period of review.  *Id.* at 11-12.  It further explains that it subsequently "deployed a new strategy for its U.S. sales" under which, instead of making "lower-priced EP [export price] sales directly to U.S. distributors" as it had in the three previous reviews, for the subject review Baoding's U.S. sales were mostly "higher priced CEP sales made by [its] affiliated U.S. importer, who sold directly to U.S. companies."  *Id.* at 12.  Plaintiff concludes by stating that "[d]ue to the substantial increase in Baoding's U.S. sales prices, Baoding fully expected to receive a zero margin, even taking into account normal variances in the valuation of surrogate prices and financial ratios."  *Id.* at 13.  Defendant-intervenor disputes Baoding's version of events, arguing that "Baoding had no sales in 2009 because of the global recession, and, as the market improved and customer demand increased, resumed its sales in 2010."  Def.-intervenor's Br. 18.  The court does not find it necessary to resolve the issues the parties debate as to the circumstances underlying the history of Baoding's pricing in reviews prior to the review at issue, as that history is not relevant to the court's decision in this case.

[9] Record information submitted by Baoding supports a finding that the company was profitable in its export sales.  *Baoding's First Supplemental Section A Resp.* 9-10 (Nov 4, 2011), (Admin.R. Part II, Doc. Nos. 20-22) ("*Baoding Supplemental Section A Resp.* "); *see also* App. A-10 to *Baoding Section A Resp.* (2010 audited financial report of Baoding); Ex. S1-16 to *Baoding Supplemental Section A Resp.* (showing profit in calendar year 2010); Ex. S1-17 to *Baoding Supplemental Section A Resp.* (financial report of Baoding for the first three months of 2011).

Plaintiff also points out that the 453.79% margin is many times larger than any margin it received in previous reviews.[10] Pl.'s Br. 11. Further, Baoding submits that in the review in question, the 453.79% margin is approximately three times higher than the China-wide rate, which Commerce determined according to facts otherwise available and an adverse inference, under section 776 of the Tariff Act, 19 U.S.C. § 1677e, based on the non-cooperation of the China-wide entity.[11] *Id*.

In its response to Baoding's contention that the 453.79% margin defies commercial reality, defendant argues, first, that "Baoding failed to raise this argument in its comments to the agency." Def.'s Br. 18. This argument is contradicted by the administrative record.[12] Baoding

---

[10] Baoding cites the 2.75% margin assigned to it in the 2003-2004 review, the 50.20% margin in the 2006-2007 review, and the 37.18% margin assigned to it in the 2007-2008 review. Pl.'s Br. 11. *See Final Results of Antidumping Duty Administrative Review*, 74 Fed. Reg. 41,121 (Int'l Trade Admin. Aug. 14, 2009), *as amended*, 74 Fed. Reg. 48,223 (Int'l Trade Admin. Sept. 22, 2009); *Final Results of Antidumping Duty Administrative Review*, 73 Fed. Reg. 55,814 (Int'l Trade Admin. Sept. 26, 2008). In arguing that the 453.79% margin is not a permissible margin, plaintiff does not concede that the 50.27% and 37.18% margins were correct and gives reasons, grounded in the Department's choices of surrogate values and financial ratios, why it believes they were not. *Id*. at 12. Defendant-intervenor argues that the 2.75% margin in the 2003-2004 review was much lower than the margins in the 2006-2007 and 2007-2008 reviews "because no domestic interested party participated in the 2003-2004 review and GEO vigorously participated in the later reviews." Def.-intervenor's Br. 17. Because the impermissibility of the 453.79% margin is apparent from the evidence on the record of this case, the court considers the parties' various characterizations of the circumstances giving rise to the previous margins to be beyond the scope of this judicial proceeding.

[11] *See Glycine from China* at I-2, Inv. No. 731-TA-718, USITC Pub. 4255 (Aug. 2011); *Antidumping Duty Order: Glycine From the People's Republic of China,* 60 Fed. Reg. 16,116 (Int'l Trade Admin. Mar. 29, 1995); *Preliminary Determination of Sales at Less than Fair Value: Glycine from the People's Republic of China,* 59 Fed. Reg. 59,211 (Int'l Trade Admin. Nov. 16, 1994). The Final Results state that the PRC-wide rate is 155.89%. *Final Results*, 77 Fed. Reg. at 64,101.

[12] Rather than Baoding, it was Commerce that failed to meet its obligation arising out of Baoding's argument that the 453.79% margin was not commercially credible. Commerce failed to respond to this argument, either in the Final Results or in the incorporated Issues & Decision (continued…)

did not fail to exhaust its administrative remedies as to this argument. It stated in its comments to the Department on the revised preliminary results that "[t]he absurd results of Commerce's revisions reflect the selection of aberrational surrogate prices to value certain key inputs used to manufacture the subject merchandise," but it also stated therein that "[t]he results of Commerce's revisions are *not commercially credible* and must be revised for the final results."[13] *Baoding's July 16, 2012 Comments* 2 (emphasis added).

Next, defendant argues that Baoding's argument is "without merit because Commerce conducted its surrogate value determinations in accordance with the relevant legal authorities and supported its determinations with substantial evidence," adding that "[a]s long as Commerce satisfies these requirements, the law does not provide for any additional scrutiny of the final resulting rate." Def.'s Br. 18. Defendant misstates the law. As the court has emphasized, it is settled law that in administering the antidumping statute, Commerce must determine margins as accurately as possible. In this case, Commerce has assigned a margin that, on the record facts, has not been demonstrated to be anything other than commercially impossible.

---

(continued…)
Memorandum. Commerce "has an 'obligation' to address important factors raised by comments from petitioners and respondents." *SKF USA, Inc. v. United States*, 630 F.3d 1365, 1374 (Fed. Cir. 2011) (citing *Timken U.S. Corp. v. United States*, 421 F.3d 1350, 1358 (Fed. Cir. 2005), *Nat'l Mining Ass'n v. Mine Safety& Health Admin.*, 116 F.3d 520, 549 (D.C. Cir. 1997)).

[13] Defendant also argues, incorrectly, that Baoding failed to raise before Commerce its argument that the 453.79% margin defies economic reality under the principle of *Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States*, 716 F.3d 1370, 1378-79 (Fed. Cir. 2013) ("*Bestpak*"). Def.'s Opp'n 44. *Bestpak* was decided in May 2013, well after the subject review was completed in October 2012. Pl.'s Reply 2. In *Bestkpak*, the Court of Appeals found that a 123% dumping margin was not supported by substantial record evidence. *Bestpak*, 716 F.3d at 1372. The case involved a challenge by a separate rate respondent challenging the dumping margin it received when Commerce averaged rates derived for the two mandatory respondents, a *de minimis* rate and a rate derived from facts otherwise available and an adverse inference. The court concluded that "[t]here is no basis in the record to tie this 123.83% rate to Bestpak's commercial activity." *Bestpak*, 716 F.3d at 1380.

Defendant argues, further, that "[a]lthough Commerce must strive to calculate dumping margins as accurately as possible, Commerce satisfies this standard in non-market economy cases by selecting surrogate values that constitute the best available information." *Id*. at 45. This too is a misstatement of the law. Congress contemplated that information that is the "best available" might still be "inadequate for purposes of determining the normal value of subject merchandise under paragraph (1)" of 19 U.S.C. § 1677b(c), requiring Commerce to determine normal value under paragraph (2) of subsection (c). Moreover, normal value calculations for subject merchandise of nonmarket economy countries cannot be shown to be within the "limits of permissible approximation," *Sigma Corp.*, 117 F.3d at 1408, when they lack any apparent connection to the underlying commercial reality.

In assigning Baoding such a huge margin, Commerce has lost sight of the purpose of the antidumping duty statute, which is remedial, not punitive. The 453.79% margin is undeniably punitive in effect, regardless of the Department's intent, and it violates the Department's obligation to treat every party before it fairly and equitably as well as the obligation to arrive at the most accurate margin possible. Therefore, the court must order a remand.

The margin determined upon remand must: (1) be the most accurate margin possible; (2) reflect the commercial and economic reality surrounding the production and sale of Baoding's subject merchandise; (3) be arrived at fairly and equitably; and (4) not be punitive. Where Commerce must make normal value calculations that are inherently imprecise, the calculations still must lie within the limits of permissible approximation. On remand, Commerce must take whatever steps are necessary to calculate a margin that satisfies these fundamental requirements. If, in the process of determining a new margin for Baoding, Commerce concludes that the record information is insufficient to allow it to determine a margin that satisfies these

fundamental requirements, it either must reopen the record to collect new information that will allow it to meet those requirements in full, or it must follow the statutory directive to determine a margin according to the method of 19 U.S.C. § 1677b(c)(2), reopening the record if it is necessary to do so in order to comply with that statutory provision.

Whatever its method, Commerce must be clear and transparent in setting forth in the remand redetermination its various methods and calculations, and its reasoning, so that plaintiff, defendant-intervenor, and the court may give the Department's new determination adequate and informed consideration.

Because Baoding has claimed that the margin defies commercial and economic reality as well as claiming that specific determinations Commerce made in reaching that margin are unsupported by substantial evidence or otherwise not in accordance with law, the court directs Commerce to reconsider any and all aspects of the Department's calculation of the 453.79% margin as necessary and appropriate in arriving at a margin that complies with the directives of this Opinion and Order. The court declines, at this time, to affirm any of the findings of fact and conclusions of law by which Commerce arrived at that margin. In so doing, the court holds in abeyance any ruling on Baoding's specific challenges to aspects of the calculation of the 453.79% margin, recognizing that those aspects may change in the remand redetermination that Commerce is directed to submit for the court's consideration. While it is likely that at least some of the decisions resulting in the unrealistic margin stemmed from the Department's choices pertaining to the surrogate country, surrogate values, and SG&A ratios, the remand is not limited to these aspects of the Final Results.

Recognizing that Commerce may find it necessary to conduct anew many of the procedures it conducted in arriving at the Final Results and to reopen the record for various

purposes, the court is allowing Commerce a period of 120 days in which to submit its remand redetermination. Should Commerce even consider that lengthy a time period inadequate, defendant should make a motion, as soon as practicable, for additional time.

Defendant has moved for a voluntary remand to allow Commerce to reconsider the financial ratios used in determining the normal value of Baoding's subject merchandise. Def.'s Mot. for a Voluntary Remand. Because the court is directing Commerce to reconsider all aspects of its determination of the margin it assigned to Baoding in the Final Results, Commerce may reconsider these ratios. However, the court will not assume that a remand confined to the question of the financial ratios could suffice for correction of the serious, fundamental deficiencies affecting the Final Results. Therefore, the court is denying defendant's voluntary remand motion as submitted.

### III. CONCLUSION AND ORDER

For the reasons discussed in the foregoing, the court remands the final decision ("Final Results") of the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") in the administrative review of the antidumping duty order on glycine from the People's Republic of China, published in *Glycine from the People's Republic of China: Final Results of Antidumping Duty Admin. Review*, 77 Fed. Reg. 64,100 (Int'l Trade Admin. Oct. 18, 2012) ("*Final Results*"). Therefore, upon consideration of all papers and proceedings in this case, and upon due deliberation, it is hereby

**ORDERED** that the Final Results be, and hereby are, set aside as unlawful and remanded for redetermination in accordance with this Opinion and Order; it is further

**ORDERED** that Defendant's Motion for a Voluntary Remand (Aug. 6, 2014), ECF No. 64, be, and hereby is, denied; it is further

    **ORDERED** that Defendant's Motion for Leave to Reply to Plaintiff's Response to Defendant's Motion for Voluntary Remand (Aug. 27, 2014), ECF No. 67, be, and hereby is, granted and defendant's reply is hereby accepted for filing; it is further

    **ORDERED** that Commerce shall issue, within 120 days of the date of this Opinion and Order, a new determination upon remand ("Remand Redetermination") that complies fully with this Opinion and Order and determines a new dumping margin for Baoding; it is further

    **ORDERED** that plaintiff and defendant-intervenor GEO Specialty Chemicals, Inc. each may file comments on the Remand Redetermination within 30 days from the date on which the Remand Redetermination is filed with the court; and it is further

    **ORDERED** that defendant may file a response to such comments within 15 days from the date on which the last of any such comments is filed with the court.

                                             /s/ Timothy C. Stanceu
                                             Timothy C. Stanceu
                                             Chief Judge

Dated:  November 3, 2015
        New York, New York