# United States Court of Appeals for the Federal Circuit

---

**NAN YA PLASTICS CORPORATION, LTD.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

**DUPONT TEIJIN FILMS, MITSUBISHI POLYESTER FILM, INC., SKC, INC.,**
*Defendants*

---

2015-1054

---

Appeal from the United States Court of International Trade in No. 1:11-cv-00535-LMG, Judge Leo M. Gordon.

---

Decided: January 19, 2016

---

PETER J. KOENIG, Squire Patton Boggs (US) LLP, Washington, DC, argued for plaintiff-appellant.

DAVID D'ALESSANDRIS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BENJAMIN C. MIZER, PATRICIA M. MCCARTHY; MICHAEL THOMAS GAGAIN, Office of the Chief

Counsel for Trade Enforcement & Compliance, United States Department of Commerce, Washington, DC.

_____

Before PROST, *Chief Judge*, LOURIE and WALLACH, *Circuit Judges.*

WALLACH, *Circuit Judge.*

The instant appeal concerns the United States Department of Commerce's ("Commerce") administrative review of the antidumping duty order covering polyethylene terephthalate film, sheet, and strip from Taiwan ("subject merchandise") for the period July 1, 2009 to June 30, 2010. *See Polyethylene Terephthalate Film, Sheet, and Strip from Taiwan*, 76 Fed. Reg. 76,941 (Dep't of Commerce Dec. 9, 2011) ("*Final Results*") (final admin. review); Memorandum from Christian Marsh, Deputy Assistant Sec'y for Antidumping & Countervailing Duty Operations, Dep't of Commerce, to Paul Piquado, Assistant Sec'y for Import Admin., Dep't of Commerce (Dec. 5, 2011) (S.A.[1] 226–35); *see also* Final Results of Redetermination Pursuant to Remand (Dep't of Commerce May 23, 2013) (S.A. 105–47). Appellant Nan Ya Plastics Corporation, Ltd. ("Nan Ya") contends that the United States Court of International Trade ("CIT") erred in sustaining Commerce's determination on remand in which it assigned an adverse facts available rate of 74.34% to Nan Ya's entries of subject merchandise entered during the

_____

[1]    "S.A." refers to the supplemental appendix filed by Appellee United States. Prior to filing its response brief, Appellee "w[as] unable to obtain a copy of the draft appendix from counsel for plaintiff-appellant" and, thus, filed "a supplemental appendix to [its] brief." Appellee's Br. 2 n.2. Appellant Nan Ya Plastics Corporation, Ltd. subsequently adopted Appellee's supplemental appendix. Appellant's Adoption of Appellee's R. App. 1–3.

period of review. *See Nan Ya Plastics Corp. v. United States* (*Nan Ya II*), 6 F. Supp. 3d 1362 (Ct. Int'l Trade 2014) (sustaining remand determination); *Nan Ya Plastics Corp. v. United States* (*Nan Ya I*), 906 F. Supp. 2d 1348 (Ct. Int'l Trade 2013) (remanding *Final Results* to Commerce). We affirm the CIT, although we sustain Commerce's determination on different grounds.

BACKGROUND

## I. Legal Framework

The antidumping statute provides for the assessment of remedial duties on foreign merchandise sold, or likely to be sold, in the United States "at less than its fair value." 19 U.S.C. § 1673 (2006).[2] At the conclusion of an investigation, if Commerce and the United States International Trade Commission have made the requisite findings, Commerce publishes an order that directs customs officers to assess duties on imports of goods covered by the investigation. *Id.* § 1673e(a).

Each year after the order is published, Commerce provides interested parties with an opportunity to request an administrative review of the order. If Commerce receives a request, it conducts a review of the order. *Id.* § 1675(a)(1). Each review constitutes a separate segment within the same administrative proceeding. *See* 19 C.F.R. § 351.102(b)(47) (2009).

---

[2] During the pendency of the appeal, Congress amended various statutes that Commerce administers, including provisions at issue in this appeal. *See* Trade Preferences Extension Act of 2015, Pub. L. No. 114-27, § 502, 129 Stat. 362, 383–84 (2015). However, the amendments do not apply to final determinations that Commerce made prior to the date of enactment. *See Ad Hoc Shrimp Trade Action Comm. v. United States*, 802 F.3d 1339, 1348–52 (Fed. Cir. 2015).

For each review, the statute requires Commerce to "determine the individual weighted average dumping margin for each known exporter and producer of the subject merchandise." 19 U.S.C. § 1677f-1(c)(1). A dumping margin reflects the amount by which the "'normal value' (the price a producer charges in its home market) exceeds the 'export price' (the price of the product in the United States) or 'constructed export price.'" *U.S. Steel Corp. v. United States*, 621 F.3d 1351, 1353 (Fed. Cir. 2010) (citing 19 U.S.C. § 1677(35)(A)) (footnote omitted).

"Although Commerce has authority to place documents in the administrative record that it deems relevant, the burden of creating an adequate record lies with interested parties and not with Commerce." *QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011) (internal quotation marks, brackets, and citations omitted). The placement of the burden on interested parties stems from the fact that the International Trade Administration, the relevant agency within Commerce, has no subpoena power. *See Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990). Accordingly, each interested party that appears before Commerce must cooperate "to the best of its ability" with Commerce's requests for information, 19 U.S.C. § 1677e(b), which means that each party must "do the maximum it is able to do," *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003). "While the standard does not require perfection and recognizes that mistakes sometimes occur, it does not condone inattentiveness, carelessness, or inadequate record keeping." *Id.*

If a respondent withholds requested information, fails to provide such information in the form or manner requested, or provides information that cannot be verified, the statute requires Commerce to use whatever facts are available to make its determination. 19 U.S.C. § 1677e(a)(2). If Commerce finds that a respondent has "failed to cooperate by not acting to the best of its ability

to comply with a request for information," the statute permits the agency to draw adverse inferences commonly known as "adverse facts available" when selecting from among the available facts. *Id.* § 1677e(b). Commerce "may employ [such] inferences . . . to ensure that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully." Statement of Administrative Action accompanying the Uruguay Round Agreements Act ("SAA"), H.R. Rep. No. 103-316, vol. 1, at 870 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4199.[3] In selecting from among the adverse facts available, Commerce may rely upon information derived from: (1) the petition filed to initiate the investigation; (2) a final determination in the investigation; (3) a previous administrative review; or (4) "any other information placed on the record." 19 U.S.C. § 1677e(b). Once it selects particular facts, Commerce uses them to assign a dumping margin for each non-cooperating respondent that it reviews.

If Commerce "relies on secondary information rather than on information obtained in the course of . . . [the] review," the statute requires that the agency "shall, to the extent practicable, corroborate that information from independent sources that are reasonably at [its] disposal." *Id.* § 1677e(c). "Secondary information is information derived from the petition that gave rise to the investigation . . . , the final determination [from the investigation], or any previous review . . . concerning the subject merchandise." SAA at 870, 1994 U.S.C.C.A.N. at 4199.

---

[3] The SAA "shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application." 19 U.S.C. § 3512(d).

Secondary information does not include information obtained from the subject segment, which is known as "primary information." *See* 19 U.S.C. § 1677e(c); *see also Gallant Ocean (Thai.) Co. v. United States*, 602 F.3d 1319, 1324 (Fed. Cir. 2010).

## II. Administrative Proceedings

In July 2002, Commerce published in the Federal Register notice of the antidumping duty order covering the subject merchandise. *See Polyethylene Terephthalate Film, Sheet, and Strip (PET Film) from Taiwan*, 67 Fed. Reg. 44,174 (Dep't of Commerce July 1, 2002) (antidumping duty order), as corrected, 67 Fed. Reg. 46,566 (Dep't of Commerce July 15, 2002). Upon timely submitted requests, Commerce initiated the subject administrative review in August 2010. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews and Deferral of Initiation of Administrative Review*, 75 Fed. Reg. 53,274, 53,275 (Dep't of Commerce Aug. 31, 2010) (initiation of review). The review covered three respondents, including Nan Ya and Shinkong Materials Technology Corporation ("Shinkong").[4] *See id.* In December 2010, without providing a reason, Nan Ya informed Commerce that it would not participate in the review. S.A. 271–72. It subsequently submitted no information to Commerce.

Commerce issued the preliminary results of the review in August 2011. *See Polyethlene Terephthalate Film,*

---

[4] During the review, Commerce found that Shinkong is affiliated with another entity, Shinkong Synthetic Fibers Corporation. *See Polyethlene Terephthalate Film, Sheet, and Strip from Taiwan*, 76 Fed. Reg. 47,540, 47,541 (Dep't of Commerce Aug. 5, 2011) (preliminary results of review), unchanged in *Final Results*, 76 Fed. Reg. 76,941.

*Sheet, and Strip from Taiwan*, 76 Fed. Reg. 47,540 (Dep't of Commerce Aug. 5, 2011) (preliminary results of review). Because Commerce determined that Nan Ya failed to act to the best of its ability when it withheld information, and that it significantly impeded the proceeding, it applied an adverse inference to Nan Ya in selecting among the facts available. *Id.* at 47,544. In selecting among the adverse facts available, Commerce assigned a 99.31% rate to Nan Ya, which represented a transaction-specific rate that Commerce calculated for Nan Ya in the immediately-preceding review. *Id.*

In the *Final Results*, although Commerce continued to find it appropriate to apply adverse facts available to Nan Ya, it lowered the rate that it assigned to Nan Ya. Commerce determined that "data from the current [period of review] can form the basis for Nan Ya's [adverse facts available] rate in this review." S.A. 231 (footnote omitted). It relied upon the highest transaction-specific margin of 74.34% that it calculated for the other mandatory respondent in the review—Shinkong.[5] S.A. 231. Commerce reviewed the underlying transaction that forms the basis of the 74.34% rate and found it non-abberant because it "falls within a range of margins" and it was otherwise not unusual. S.A. 231 (footnote omitted). Commerce also observed that "the data from the most recent review in which Nan Ya participated show that [Commerce] calculated numerous margins for Nan Ya far above 74.34[%]," meaning that the 74.34% rate reflects prices at which Nan Ya could have sold the subject merchandise. S.A. 258. Commerce made these findings but

---

[5] Nan Ya argued in its administrative case brief submitted after the preliminary results, but before the *Final Results*, that Commerce should use information obtained during the subject review from Shinkong. S.A. 199–200.

did not corroborate Shinkong's information pursuant to 19 U.S.C. § 1677e(c), finding the corroboration requirement inapplicable because Shinkong's data reflected primary, rather than secondary, information.  S.A. 233.  Nan Ya subsequently appealed to the CIT.

## III. CIT Proceedings

In February 2013, the CIT remanded to Commerce so that the agency could address various arguments that Nan Ya raised for the first time in the litigation.  *Nan Ya I*, 906 F. Supp. 2d at 1355.  The CIT noted that Nan Ya's rate changed between the preliminary and *Final Results*, such that Nan Ya's first opportunity to challenge the revised margin arose in the litigation.  *Id.* at 1354.  It also directed Commerce to further explain whether the corroboration requirement under 19 U.S.C. § 1677e(c) applied to Shinkong's information obtained during the subject review in light of this court's opinion in *F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000).[6]  *Id.* at 1354–55.

On remand, Commerce rejected Nan Ya's arguments and continued to apply the 74.34% adverse facts available rate.  S.A. 117–25.  Commerce determined that, under the second step in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984), a permissible construction of "any other information placed on the record" in 19 U.S.C. § 1677e(b)(4) permits it to use

---

[6]    In relevant part, *De Cecco* explains that "Congress's imposition of the corroboration requirement in 19 U.S.C. § 1677e(c) [demonstrates] that it intended for an adverse facts available rate [based on secondary information] to be a reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase intended as a deterrent to non-compliance."  216 F.3d at 1032.

the highest transaction-specific margin from the subject review. S.A. 110–14. It also found that it need not corroborate Shinkong's information and that § 1677e(c)'s corroboration requirement did not apply because the information that it used as adverse facts available came from the record of the subject review, rather than from a separate segment of the proceeding. S.A. 108–10 & n.2. It also found that *De Cecco* "highlights [the] distinction requiring corroboration of only secondary information." S.A. 110 n.3.

The CIT subsequently sustained Commerce's remand redetermination. *Nan Ya II*, 6 F. Supp. 3d at 1371. As to the corroboration requirement of § 1677e(c), the CIT observed that "Commerce makes a fairly airtight argument" under "a straightforward *Chevron* step one interpretation that focuses on the plain meaning" of the corroboration requirement as set forth in § 1677e(c). *Id.* at 1367. Nevertheless, it observed that in the *Final Results* and in its remand redetermination "Commerce did not simply select Shinkong's highest transaction specific margin in setting Nan Ya's rate, and leave it at that. Commerce went further and measured the rate's appropriateness by analyzing Nan Ya's *own* prior transaction-specific data." *Id.* (citations omitted). Because Commerce "followed its standard corroboration playbook to tie the selected [adverse facts available] rate . . . to . . . Nan Ya," the CIT held that the corroboration requirement of § 1677e(c) and *De Cecco*'s reasonableness requirement "appl[y] after all." *Id.* at 1367–68 (citations omitted).

Although the CIT regarded Nan Ya's arguments as "hav[ing] some merit," it held that "they do not render Commerce's use of [the 74.34% rate] unreasonable because other competing record information suggests that the [rate] was not aberrational." *Id.* at 1369. It held that substantial evidence supported Commerce's selection of the 74.34% rate, including the fact that the transaction underlying that rate "involved a larger quantity than

many of Shinkong's other sales and differed from other models in 'the least important physical characteristics.'" *Id.* (citation omitted). It also considered significant the fact that Shinkong did not ask Commerce to exclude the transaction as aberrational. *Id.* Finally, the CIT found that Nan Ya applied its arguments only to Shinkong's information, "leav[ing] unchallenged Commerce's corroborative justification for the reasonableness of the 74.34[%] rate: '*Nan Ya* was capable of dumping at' 74.34[%] as evidenced by *Nan Ya's* own data" from the immediately-preceding review. *Id.* at 1370 (citation omitted).

Nan Ya appeals the CIT's final judgment. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5) (2012).

DISCUSSION

I. Standard of Review

The court applies the same standard of review as the CIT, upholding Commerce determinations that are supported "by substantial evidence on the record" and otherwise "in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Although we review the decisions of the CIT de novo, "we give great weight to the informed opinion of the [CIT] . . . and it is nearly always the starting point of our analysis." *Ningbo Dafa Chem. Fiber Co. v. United States*, 580 F.3d 1247, 1253 (Fed. Cir. 2009) (internal quotation marks, brackets, and citations omitted).

The court reviews de novo whether Commerce's interpretation of the statute is in accordance with law, doing so within the two-step framework established in *Chevron*. Under the first step, we must determine "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. If Congress's intent is clear, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43. Under the second step

of *Chevron*, "if an agency's statutory interpretation promulgated under the authority delegated [to] it by Congress is 'reasonable' it is 'binding [o]n the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute.'" *Ningbo Dafa Chem. Fiber Co.*, 580 F.3d at 1253 (quoting *Wheatland Tube Co. v. United States*, 495 F.3d 1355, 1360 (Fed. Cir. 2007)) (second alteration in original); *see also United States v. Eurodif S.A.*, 555 U.S. 305, 316 (2009) ("[Commerce's] interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous.").

## II. Commerce's Determination Accords with Law

Nan Ya does not contest Commerce's decision to apply adverse facts available in determining its dumping margin, but principally argues that Commerce applied the incorrect legal standard in determining the margin. Appellant's Br. 5 ("The [adverse facts available rate] here is contrary to . . . law."); Appellant's Reply Br. 1 ("Our argument is as to *legal standards* that Commerce must use for [a] lawful" adverse facts available rate. (emphasis modified)). Specifically, Nan Ya contends that Commerce violated 19 U.S.C. § 1677e(b) and (c) when it assigned the 74.34% rate to Nan Ya. *See* Appellant's Br. 5. As discussed below, Commerce's determination does not conflict with law.

## A. Nan Ya Misunderstands Commerce's Duties Under the Statutory Scheme

As an initial matter, Nan Ya bases a number of its allegations on the legal premise that Commerce must select an adverse facts available rate that reflects "commercial reality" and is "accurate." Appellant's Br. 5, 7, 8, 10, 14, 16, 18–19, 27, 31–32 (discussing "commercial reality"); *id.* at 3–4, 6, 20, 25–26, 34 (discussing "accurate"). Nan Ya's arguments borrow these terms from past decisions of this court. The CIT similarly has relied upon these terms in

recent decisions, not only in cases involving adverse facts available determinations but also in other areas. *See, e.g.*, *Baoding Mantong Fine Chemistry Co. v. United States*, No. 12-00362, 2015 WL 6685530, at \*6 (Ct. Int'l Trade Nov. 3, 2015) (discussing "commercial reality" in adverse facts available context); *Dongguan Sunrise Furniture Co. v. United States*, No. 10-00254, 2015 WL 179003, at \*1–5 (Ct. Int'l Trade Jan. 14, 2015) (same); *see also Vinh Hoan Corp. v. United States*, 49 F. Supp. 3d 1285, 1302–06, 1321 (Ct. Int'l Trade 2015) (discussing the term "accurate" in the selection of a surrogate country and surrogate values under 19 U.S.C. § 1677b(c)(2), (4)); *Albemarle Corp. v. United States*, 931 F. Supp. 2d 1280, 1291–92 (Ct. Int'l Trade 2013) (discussing "commercial reality" in the selection of the rate assigned to non-individually examined respondents in nonmarket economy antidumping proceedings). Our jurisprudence to date has not straight-forwardly defined these terms; today, we clarify their meaning.

In the early 1990s, we began to use the terms "commercial reality" and "accurate" in our trade remedy decisions in a variety of contexts. For example, we held: (1) that Commerce, consistent with the statute in effect at the time, may rely upon a rebuttable presumption that the highest margin calculated in a prior segment of the proceeding reflects a non-cooperating respondent's pricing behavior during a later period, *Rhone Poulenc*, 899 F.2d at 1191 (using "accurately" to sustain Commerce's interpretation of the predecessor to § 1677e(b));[7] (2) that

---

[7]    The predecessor statute stated:

In making [its] determinations under this subtitle, [Commerce] . . . shall, whenever a party or any other person refuses or is unable to produce information requested in a timely manner and in the form required, or otherwise significantly im-

Commerce must consider a widely-accepted accounting principle in imputing costs and may support its decision by relying upon a respondent's records kept in the ordinary course of business, *LMI-La Metalli Industriale, S.p.A. v. United States*, 912 F.2d 455, 457–58, 460–61 (Fed. Cir. 1990) (favorably quoting Commerce's use of "accurate" in calculating a respondent's warehousing costs and discussing "commercial reality" in the context of time value of money); (3) that Commerce cannot assume absolute consistency in prices, but may compare foreign and domestic goods based on shared physical characteristics, *U.H.F.C. Co. v. United States*, 916 F.2d 689, 697–98, 701 (Fed. Cir. 1990) (discussing "commercial reality" in the context of consistency of prices and "accurate" when describing Commerce's decision to match products with similar physical characteristics); and (4) that Commerce must account for a particular company's sales practice when interpreting a contract, *Samsung Elecs. Am., Inc. v. United States*, 106 F.3d 376, 379, 382 (Fed. Cir. 1997) (using "commercial reality" and "accurate" to discuss contract terms). We also used the term "accurate" in maintaining that, when Commerce uses secondary information as adverse facts available, that secondary information must reflect an "estimate" constructed pursuant to the statutory method for calculating dumping margins to meet the corroboration requirement under § 1677e(c). *De Cecco*, 216 F.3d at 1032. And we used the terms while observing that a respondent's dumping margin may change if the respondent changes its pricing behavior. *See Parkdale Int'l v. United States*, 475 F.3d 1375, 1380 (Fed. Cir. 2007) (using "commercial realit[y]" and "accurate[]" to describe the attendant changes in a dumping

---

pedes an investigation, use the best information otherwise available.

19 U.S.C. § 1677e(c) (1988).

margin following a respondent's change in pricing behavior).

Since 2010, we began to use the terms with greater frequency. For example, in reviewing a Commerce adverse facts available determination made during the first administrative review of an order, we said that the petition rate Commerce selected "did not . . . represent commercial reality" within the industry in light of the dumping margins calculated at the end of the investigation for cooperative respondents. *Gallant Ocean*, 602 F.3d at 1323–24; *see also id.* (favorably quoting the use of "accurate" in *De Cecco*). We have repeated that statement when reviewing the same kind of Commerce determination in other appeals. *See, e.g.*, *Ad Hoc Shrimp*, 802 F.3d at 1361 (quoting Commerce's use of "commercial reality" and favorably quoting the use of "accurate" in *De Cecco*); *Dongtai Peak Honey Indus. Co. v. United States*, 777 F.3d 1343, 1356 (Fed. Cir. 2015) (using "commercial reality" to describe a margin that Commerce calculated using another respondent's verified information and that Commerce applied as adverse facts available in a later segment and holding that accuracy concerns cannot overcome Commerce's ability to enforce its procedural deadlines); *KYD, Inc. v. United States*, 607 F.3d 760, 770 (Fed. Cir. 2010) (favorably quoting use of "commercial reality" in *Gallant Ocean*). We also have stated that the rate Commerce assigns to a non-individually examined respondent in a nonmarket economy antidumping proceeding should reflect that respondent's "commercial reality." *See Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1379–80 (Fed. Cir. 2013); *see also id.* (favorably quoting use of "accurate" in *Rhone Poulenc* and *Gallant Ocean*);[8] *cf. Changzhou Wujin Fine Chem. Factory Co. v.*

---

[8] Our decision in *Bestpak* used "commercial reality" and "economic reality" synonymously. 716 F.3d at 1378–

*United States*, 701 F.3d 1367, 1378–79 (Fed. Cir. 2012) (favorably quoting use of "accurately" and "accurate" in *Parkdale* and *Gallant Ocean*, respectively); *id.* at 1384 (Reyna, J., dissenting) (explaining that an adverse facts available rate need not reflect a non-individually examined respondent's "commercial reality").

We clarify that "commercial reality" and "accurate" represent reliable guideposts for Commerce's determinations. Those terms must be considered against what the antidumping statutory scheme demands. *See Chevron*, 467 U.S. at 842–43 (holding that agencies and the courts must follow Congress's unambiguous directive or the agencies otherwise must provide a permissible construction of an ambiguous statute). The term "commercial reality" does not appear in the statutes that Commerce administers, 19 U.S.C. § 1671 *et. seq*, and the term "accurate" appears only once, *id.* § 1677m(b) (explaining that a party that provides factual information to Commerce "shall certify that such information is accurate and complete to the best of that person's knowledge").[9] Congress has provided specific methods for Commerce to employ when it executes its duties, such as in calculating normal value or export price, §§ 1677a (export price), 1677b (normal value), or when the agency assigns rates on the basis of adverse facts available, § 1677e(b). When Congress directs the agency to measure pricing behavior and

---

80. In that decision, we borrowed the statement "economic reality" from the Supreme Court's opinion in *Eurodif*, *id.* at 1378, which held that "public law is not constrained by private fiction" because the statute directed Commerce to treat the leasing arrangements at issue in that case as sales of goods, rather than services rendered. *See Eurodif*, 555 U.S. at 317–18.

[9] None of our decisions to date have quoted the term "accurate" from § 1677m(b).

otherwise execute its duties in a particular manner, Commerce need not examine the economic or commercial reality of the parties specifically, or of the industry more generally, in some broader sense. *See Eurodif*, 555 U.S. at 317–18 (explaining that "public law is not constrained by private fiction" when Congress has entrusted Commerce to take particular action). The statute, or Commerce's permissible interpretation of it, provides the backdrop against which we must review the agency's determination. *Chevron*, 467 U.S. at 842–43.

Our case law and the statute thus teach that a Commerce determination (1) is "accurate" if it is correct as a mathematical and factual matter, thus supported by substantial evidence; and (2) reflects "commercial reality" if it is consistent with the method provided in the statute, thus in accordance with law. *See Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1275–76 (Fed. Cir. 2012) (sustaining a Commerce determination as "accurate" because it was supported by substantial evidence and "determined in accordance with the statutory requirements" (citation omitted)); *KYD*, 607 F.3d at 768 (discussing same); *see also Gallant Ocean*, 602 F.3d at 1323–24 (explaining that a rate did not reflect "commercial reality" because of concerns that the numbers used in the underlying calculations later proved not to be "credible," meaning that Commerce had not used a lawful method to assign a dumping margin under § 1677e(b) (citation omitted)). Our holding reflects what the statutory scheme already requires of Commerce to support its determinations. 19 U.S.C. § 1516a(b)(1)(B)(i) (explaining that Commerce's determination will be sustained unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law"). And it reflects the familiar principle that "[a]dministrative decisions should be set aside . . . only for substantial procedural or substantive reasons as mandated by statute, . . . not simply because the court is unhappy with the result reached." *Vt. Yankee*

*Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 558 (1978) (internal citation omitted). As we have said before about the antidumping law, "[o]ur duty is not to weigh the wisdom of, or to resolve any struggle between, competing views of the public interest, but rather to respect legitimate policy choices made by [Commerce] in interpreting and applying the statute." *Suramerica de Aleaciones Laminadas, C.A. v. United States*, 966 F.2d 660, 665 (Fed. Cir. 1992) (citation omitted).

The court does not use "accurate" and "commercial reality" in some broader sense, such as to require Commerce to apply the statutory methods to determine the industry-wide "commercial realities prevailing" during a particular time period. *Albemarle*, 931 F. Supp. 2d at 1292. Nor must Commerce "prove a negative" about a respondent's pricing behavior if that respondent fails to provide evidence that would yield more representative calculations of its pricing behavior, *see, e.g.*, *Home Meridian Int'l, Inc. v. United States*, 772 F.3d 1289, 1295 (Fed. Cir. 2014), for the statute permits Commerce to use adverse facts available in that situation to assign the respondent a margin, 19 U.S.C. § 1677e(b); *see also PSC VSMPO–Avisma Corp. v. United States*, 688 F.3d 751, 760 (Fed. Cir. 2012) (explaining that "absent constitutional constraints or extremely compelling circumstances[,] the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties" (internal quotation marks, brackets, and citation omitted)). The statutory scheme measures through specific methods non-commercial pricing behavior deemed unfair by Congress—namely, dumping. 19 U.S.C. § 1671 *et. seq.* To obligate Commerce to account for other market conditions that the statute does not "misconceives not only the scope of the agency's statutory responsibility, but also the nature of the administrative process," *Vt. Yankee Nuclear Power Corp.*, 435 U.S. at 550, and could subject Com-

merce to allegations that it acts *ultra vires* in future administrative proceedings, *see City of Arlington v. FCC*, 133 S. Ct. 1863, 1869 (2013) (explaining that an agency's "power to act and how [it is] to act is authoritatively prescribed by Congress, so that when [it] act[s] improperly, . . . what [it] do[es] is ultra vires"). It also would permit courts to reach "results-oriented" outcomes not intended by Congress. *See, e.g.*, *Viraj Grp. v. United States*, 476 F.3d 1349, 1358 (Fed. Cir. 2007) (a court errs in adopting an interpretation of a statute that "would create a tremendous burden on Commerce that is not required or suggested by the statute"); *see also JBF RAK LLC v. United States*, 790 F.3d 1358, 1368 (Fed. Cir. 2015) (discussing same). "Indeed, the pursuit of what the court perceives to be the best or correct result would render judicial review totally unpredictable." *PSC*, 688 F.3d at 761 (internal quotation marks and citation omitted).

### B. Nan Ya Fails to Demonstrate Error by Commerce

Nan Ya alleges that Commerce's determination does not comport with what 19 U.S.C. 1677e(b) and (c) demand. Appellant's Br. 5–35. We discuss each set of arguments in turn.

### 1. Commerce's Decision to Use Shinkong's Highest Transaction-Specific Margin as a Total Adverse Facts Available Rate Is Permitted by the Plain Terms of 19 U.S.C. § 1677e(b)(4)

Section 1677e(b)(4) permits Commerce to use "any other information placed on the record" as adverse facts available. 19 U.S.C. § 1677e(b)(4). In its remand redetermination, Commerce found that language ambiguous because it does not directly address whether the agency may use the highest "transaction-specific margin from an ongoing segment . . . as a total [adverse facts available] rate." S.A. 111. Nevertheless, Commerce found that the statute reasonably could be read to allow such use be-

cause it reflects "a model-specific comparison of a respondent's U.S. sale price to its home market sale price—the quintessential comparison for a dumping margin." S.A. 112–13. Finally, it found that the SAA supports its interpretation. S.A. 113.

We disagree with Commerce that the phrase "any other information placed on the record" in 19 U.S.C. § 1677e(b)(4) is ambiguous and, instead, hold that the statute's plain terms permit the agency to apply Shinkong's highest transaction-specific margin as Nan Ya's adverse facts available rate. Under the first step of *Chevron*, "we must first carefully investigate the matter to determine whether Congress's purpose and intent on the question at issue is judicially ascertainable," using "traditional tools of statutory construction." *Timex V.I., Inc. v. United States*, 157 F.3d 879, 881–82 (Fed. Cir. 1998) (internal quotation marks and citations omitted). One such canon explains that, in the absence of a statutory definition, "we construe . . . statutory term[s] in accordance with [their] ordinary or natural meaning." *FDIC v. Meyer*, 510 U.S. 471, 476 (1994) (citation omitted).

The statute does not define the phrase "any other information placed on the record." The word "any" is the key modifier in the phrase in question. "Any" means "one that is selected without restriction or limitation of choice." *Any*, Webster's Third New International Dictionary of the English Language Unabridged (1986). The absence of a "restriction or limitation" means that the statute gives Commerce substantial discretion to decide which record information to use and certainly encompasses Shinkong's single highest transaction-specific margin. That conclusion finds support in the broad reach that the Supreme Court has given to the word "any." *See, e.g.*, *United States v. Rosenwasser*, 323 U.S. 360, 363 (1945) (equating "any" with "all"); *see also Barseback Kraft AB v. United States*, 121 F.3d 1475, 1481 (Fed. Cir. 1997) (discussing same). And our conclusion is consistent with what we have said

before, albeit not in precise *Chevron* terms. *See Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330, 1339 (Fed. Cir. 2002) ("[I]t is within Commerce's discretion to presume that the highest prior margin reflects the current margins." (citation omitted)).

Our conclusion finds further support in the structure of § 1677e. As explained below, Congress did not require Commerce to corroborate information that it uses in the subject review if the agency obtained the information in the course of that segment; however, Congress required Commerce to corroborate information from a prior segment of the proceeding that it uses as adverse facts available in a later segment. 19 U.S.C. § 1677e(b)–(c). That Congress decided not to require Commerce to corroborate information obtained in this review, such as Shinkong's, further evinces that Commerce has broad discretion to choose among the available record information. *See, e.g., Russello v. United States*, 464 U.S. 16, 23 (1983) ("'[W]here Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" (citation omitted)). Because the statute's text "answers the question, that is the end of the matter."[10] *Timex*, 157 F.3d at 882 (citation omitted).

Nan Ya alleges that Commerce unlawfully interpreted "any other information placed on the record" in 19 U.S.C. § 1677e(b)(4) as allowing it to use the highest transaction-specific margin on the record of the review. According to Nan Ya, Commerce's interpretation unreasonably: (1)

---

[10] We observe that the SAA mentions only that Commerce may use "other information placed on the record"; it does not provide any limitation on which information the agency may use. SAA at 870, 1994 U.S.C.C.A.N. at 4199.

incorporates within its ambit "a de minimis amount of sales" that results in a margin "that is many multiples more than all calculated margins," Appellant's Br. 5 (capitalization omitted); (2) permits the agency to use a margin that is "aberrant" and otherwise falls outside the "continuum" of calculated margins in view of various statistical analyses, *id.* at 8, 13–17; (3) relies upon incomplete criteria in light of other statutory and regulatory criteria, *id.* at 17–21; (4) relies upon the absence of a request from Shinkong to exclude the transaction giving rise to the 74.34% rate, *id.* at 23–25; and (5) creates a *per se* rule that is inconsistent with agency practice, *id.* at 21–23.

As an initial matter, we observe that Nan Ya fails to make these arguments within the operative *Chevron* framework. That misstep typically warrants a finding of waiver. *See United States v. Great Am. Ins. Co.*, 738 F.3d 1320, 1328 (Fed. Cir. 2013) ("It is well established that arguments that are not appropriately developed in a party's briefing may be deemed waived." (citations omitted)); *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (finding waiver when "counsel has made no attempt to address the issue" because "[t]he premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them"); *see also Zhejiang Sanhua Co. v. United States*, 61 F. Supp. 3d 1350, 1358 (Ct. Int'l Trade 2015) (citing *Great American Insurance* and *Carducci* in holding that a party waived its arguments for failing to raise them within the operative *Chevron* framework); *JBF RAK LLC v. United States*, 991 F. Supp. 2d 1343, 1356 (Ct. Int'l Trade 2014) (citing *Great American Insurance* in reaching the same conclusion); *MTZ Polyfilms, Ltd. v. United States*, 659 F. Supp. 2d 1303, 1308–09 (Ct. Int'l Trade 2009) (citing *Carducci* in reach-

ing same conclusion).   Nevertheless, for clarity, we address Nan Ya's contentions.

Nan Ya fails to recognize that neither "any other information placed on the record" in 19 U.S.C. § 1677e(b)(4), nor any other provision in subsection (b) contains any of the requirements it alleges.   Section 1677e(b) states:

> If [Commerce] . . . finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from [Commerce] . . . , [Commerce] . . . , in reaching the applicable determination under this subtitle, may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available.   Such adverse inference may include reliance on information derived from—
>
> (1) the petition,
>
> (2) a final determination in the investigation under this subtitle,
>
> (3) any previous review under section 1675 of this title or determination under section 1675b of this title, or
>
> (4) any other information placed on the record.

19 U.S.C. § 1677e(b).   The statute simply does not require Commerce to select facts that reflect a certain amount of sales, yield a particular margin, fall within a continuum according to the application of particular statistical methods, or align with standards articulated in other statutes and regulations.   Congress decided what requirements Commerce must fulfill in reaching its determinations, § 1677e(b), and we do not impose conditions not present in or suggested by the statute's text.   *See, e.g.*, *JBF*, 790 F.3d at 1368; *Viraj Grp.*, 476 F.3d at 1357–58.

Nan Ya's remaining arguments also fail. Although Nan Ya alleges that Commerce's remand redetermination establishes "that Commerce may *per se* use the highest calculated dumping margin as [adverse facts available]," Appellant's Br. 25, its argument ignores Commerce's statement in that determination, S.A. 127 (Commerce's remand redetermination "does not create a *per se* rule that automatically requires use of the highest transaction-specific margin."); S.A. 127 (explaining that Commerce "ultimately applied a margin significantly lower than Nan Ya's highest transaction-specific margin [from the immediately-preceding review that is] on the record" of this review). Commerce articulated that the use of the highest transaction-specific margin will depend upon the facts of a particular case. S.A. 120, 127 (explaining that, if the highest weighted-average margins from any segment of the proceeding are "insufficient to induce cooperation," then it will use other transaction-specific margins).

Finally, Nan Ya argues that Commerce's decision to apply adverse facts available impermissibly "rest[s] wholly (100%) on deterrence (punishment)." Appellant's Br. 25–28. The legislative history belies Nan Ya's argument. The SAA explains that

> [w]here a party has not cooperated, Commerce . . . may employ adverse inferences about the missing information to ensure that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully. In employing adverse inferences, one factor [Commerce] will consider is the extent to which a party may benefit from its own lack of cooperation.

SAA at 870, 1994 U.S.C.C.A.N. at 4199. On remand, Commerce explained that, "[b]ecause the highest weighted calculated margin applied in this proceeding is Nan Ya's own previous [adverse facts available] rate of 18.30[%], a major consideration for [Commerce] was

selecting a rate sufficient to induce Nan Ya to cooperate in the future." S.A. 127–28; *see also* S.A. 231 (finding that the 18.30% rate "was calculated for Nan Ya during the most recently completed administrative review and Nan Ya *still* chose to not cooperate" (emphasis added)). Thus, Commerce's consideration of the deterrent effect of its determination reflects the law's expectation.

2. Commerce Correctly Followed the Unambiguous Terms of the Statute and Found that the Corroboration Requirement in 19 U.S.C. § 1677e(c) Does Not Apply

Nan Ya next argues that Commerce's determination "violates the statutory corroboration requirement" because Commerce did not corroborate Nan Ya's information from the immediately-preceding review that it used to support its selection of the 74.34% rate. Appellant's Br. 28 (capitalization omitted). Nan Ya's argument overlooks the plain language of 19 U.S.C. § 1677e(c).

Before we address Nan Ya's argument, we first must determine what § 1677e(c) requires. Section 1677e(c) states that

> [w]hen [Commerce] . . . relies on secondary information rather than on information obtained in the course of an investigation or review, [Commerce] . . . shall, to the extent practicable, corroborate that information from independent sources that are reasonably at [its] disposal.

19 U.S.C. § 1677e(c).

Commerce properly found that § 1677e(c) unambiguously does not require the agency to corroborate information obtained during the course of the subject segment (i.e., primary information) when it uses that information

as facts available, adverse or otherwise.[11]  S.A. 108–10 & nn.2 & 3.  The statute's text contrasts "information obtained in the course of . . . [a] review," such as Shinkong's, with information from a prior segment of the proceeding (i.e., secondary information).  19 U.S.C. § 1677e(c).  That dichotomy supports Commerce's interpretation that the corroboration requirement does not apply when Commerce uses primary information, rather than secondary information, when selecting from among the adverse facts available.  *See Russello*, 464 U.S. at 23.  The SAA confirms that primary information does not meet the definition of "secondary information" that requires corroboration.  *See* SAA at 870, 1994 U.S.C.C.A.N. at 4199 (contrasting primary and secondary information, defining the latter as "information derived from the petition that gave rise to the investigation . . . , the final determination [from the investigation], or any previous review . . . concerning the subject merchandise").  And we previously have recognized, albeit not in precise *Chevron* terms, that § 1677e(c) unambiguously does not require Commerce to corroborate primary information.  *See Gallant Ocean*, 602 F.3d at 1324 ("*Ta Chen* was not a corroboration case as Commerce relied on primary information." (discussing 298 F.3d at 1339)).

The CIT erred to the extent that it held that the corroboration requirement in § 1677e(c) applies when Commerce relies upon primary information.  *Nan Ya II*, 6 F. Supp. 3d at 1367–68.  It found that Commerce made "a fairly airtight argument" under "a straightforward *Chevron* step one" analysis of § 1677e(c), in which the agency

---

[11]    During oral argument, Nan Ya conceded that 19 U.S.C. § 1677e(c) unambiguously does not require Commerce to corroborate primary information. *See* Oral Argument at 8:28–9:54, http://oralarguments.cafc.us courts.gov/default.aspx?fl=2015-1054.mp3.

determined that it is not required to corroborate primary information. *Id.* at 1367. Nevertheless, the CIT held the corroboration requirement under § 1677e(c) applies to primary information and, thus, so does *De Cecco*. *Id.* at 1367–68. That holding conflicts with the plain language of § 1677e(c), the guidance provided in the SAA, and other CIT decisions. *See* § 1677e(c) (contrasting "information obtained in the course of . . . [a] review" with secondary information); SAA at 870, 1994 U.S.C.C.A.N. at 4199 (same); *see also iScholar Inc. v. United States*, No. 10-00107, 2011 WL 109014, at *2–3 (Ct. Int'l Trade Jan. 13, 2011) (where the CIT did not require Commerce to corroborate adverse facts available pursuant to 19 U.S.C. § 1677e(c) when the agency selected information from the subject segment); *Ass'n of Am. Sch. Paper Suppliers v. United States*, 32 Ct. Int'l Trade 1196, 1202–04 (2008) (same). The CIT's interpretation of § 1677e(c) appears motivated by the fact that "Commerce did not simply select Shinkong's highest transaction specific margin in setting Nan Ya's rate, and leave it at that." *Nan Ya II*, 6 F. Supp. 3d at 1367. That Commerce relied upon corroborating evidence (i.e., Nan Ya's data from the immediately-preceding review) to support its use of primary information does not change the text of § 1677e(c), which explains that Commerce is not required to corroborate primary information. *Chevron*, 467 U.S. at 842–43 (holding that agencies and the courts must follow Congress's unambiguous directive).

Turning to Nan Ya's argument, the statute does not require Commerce to corroborate corroborating data (i.e., Nan Ya's data from the immediately-preceding review); rather, it explains that Commerce "shall, to the extent practicable, corroborate [secondary] information." 19 U.S.C. § 1677e(c). As the CIT correctly observed, to hold otherwise would lead to the absurd result in which Com-

merce corroborates "ad infinitum." *Nan Ya II*, 6 F. Supp. 3d at 1371.[12]

### 3. Exhaustion and Waiver Bars Nan Ya's Remaining Arguments

Finally, Nan Ya asserts that other "popular statistics methodologies"—namely, the "Hampel Identifier Test" and the "Box & Whisker Plot"—demonstrate that the transaction from which Commerce derived the 74.34% rate is an outlier. Appellant's Br. 16, 32. Nan Ya never raised these statistical methodologies in its comments on

---

[12] Notwithstanding its unequivocal statement that it has raised only legal challenges in this appeal, Appellant's Reply Br. 5, Nan Ya contends that "even erroneously assuming use of uncorroborated data is permissible, Commerce's own continuum test as to such data indicates that the 74.34% [adverse facts available rate] is not supported by substantial evidence," Appellant's Br. 29 (capitalization omitted); *see id* at 29–35 (discussing other evidence). It also contends that Commerce erred in relying upon the absence of a request from Shinkong to exclude the transaction giving rise to the 74.34% rate. *Id.* at 23–25. These arguments contest the weight that Commerce afforded to competing evidence, which we may not disturb. *See Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 936 (Fed. Cir. 1984). In any event, we agree with the CIT that substantial evidence supports Commerce's selection of the 74.34% rate because the transaction underlying that rate "involved a larger quantity than many of Shinkong's other sales and differed from other models in the least important physical characteristics" and "Nan Ya was capable of dumping at 74.34[%] as evidenced by Nan Ya's own data" from the immediately-preceding review. *Nan Ya II*, 6 F. Supp. 3d at 1369–70 (internal quotation marks and citations omitted).

Commerce's draft remand or in its opening brief, remand comments, or reply to remand comments before the CIT. S.A. 59–75 (reply to remand comments), 77–96 (remand comments), 148–58 (comments on draft remand), 162–81 (opening brief). Nan Ya has thus both failed to exhaust its remedies before the agency and also waived these arguments. *See, e.g.*, *Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378, 1388 (Fed. Cir. 2014) ("Commerce regulations require the presentation of all issues and arguments in a party's case brief, and we have held that a party's failure to raise an argument before Commerce constitutes a failure to exhaust its administrative remedies." (footnote omitted)); *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997) ("With a few notable exceptions, . . . appellate courts do not consider a party's new theories[] lodged first on appeal."). Nan Ya conceded during oral argument that it had not preserved these arguments for appeal. *See* Oral Argument at 0:59–1:35, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2015-1054.mp3.

## CONCLUSION

Commerce may use, as adverse facts available pursuant to 19 U.S.C. § 1677e(b)(4), the highest transaction-specific margin on the record of the subject review. If Commerce selects the highest transaction-specific margin from the subject review from among the adverse facts available, it need not corroborate that information pursuant to § 1677e(c). Although the provisions of the Trade Preferences Extension Act of 2015 do not govern our review of Commerce's determinations in this appeal, *Ad Hoc Shrimp*, 802 F.3d at 1348–52, we note that Congress confirmed there that Commerce has the "discretion to apply [the] highest rate" and need not demonstrate that a particular dumping margin "reflects an alleged commercial reality of the interested party," Trade Preferences Extension Act of 2015, Sec. 502(3), § 1677e(d)(2), (3)(B), 129 Stat. at 384.

We have considered Nan Ya's remaining arguments that have been exhausted and not waived and find them unpersuasive. Accordingly, the decision of the United States Court of International Trade is

**AFFIRMED**