NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**UTTAM GALVA STEELS LIMITED,**
*Plaintiff-Appellant*

v.

**UNITED STATES, CALIFORNIA STEEL INDUSTRIES, INC., STEEL DYNAMICS, INC.,**
*Defendants-Appellees*

---

2021-2119

---

Appeal from the United States Court of International Trade in No. 1:19-cv-00044-LMG, Senior Judge Leo M. Gordon.

---

Decided: May 5, 2022

---

JOHN M. GURLEY, ArentFox Schiff LLP, Washington, DC, for plaintiff-appellant. Also represented by DIANA DIMITRIUC QUAIA, JESSICA R. DIPIETRO, AMAN KAKAR, MATTHEW MOSHER NOLAN, NANCY NOONAN, LEAH N. SCARPELLI.

MOLLIE LENORE FINNAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee United

States.  Also represented by BRIAN M. BOYNTON, CLAUDIA BURKE, PATRICIA M. MCCARTHY; RACHEL BOGDAN, Office of the Chief Counsel for Trade Enforcement and Compliance, United States Department of Commerce, Washington, DC.

ROGER BRIAN SCHAGRIN, Schagrin Associates, Washington, DC, for defendants-appellees California Steel Industries, Inc., Steel Dynamics, Inc.  Also represented by MICHELLE ROSE AVRUTIN, BENJAMIN JACOB BAY, NICHOLAS J. BIRCH, CHRISTOPHER CLOUTIER, ELIZABETH DRAKE, WILLIAM ALFRED FENNELL, LUKE A. MEISNER, KELSEY RULE.

————————————

Before PROST, TARANTO, and CHEN, *Circuit Judges*.

PROST, *Circuit Judge*.

Uttam Galva Steels Limited ("Uttam Galva") was a mandatory respondent in the Department of Commerce's ("Commerce") administrative review of a countervailing duty order.  Commerce applied adverse facts available ("AFA") after it determined that Uttam Galva improperly failed to report an affiliated, cross-owned company.  Uttam Galva appealed to the Court of International Trade and argued, in relevant part, that Commerce's application of AFA and its inclusion of certain programs in calculating Uttam Galva's net countervailable subsidy rate were not supported by substantial evidence.  The Court of International Trade sustained Commerce's decisions on both counts.  Uttam Galva appeals.  Because we likewise determine that Commerce's decisions are supported by substantial evidence, we affirm.

BACKGROUND

I

Commerce conducted an investigation under its countervailing duty order covering certain corrosion-resistant

steel products (CORE) from India. *Certain Corrosion-Resistant Steel Products from India*, 84 Fed. Reg. 11,053 (Dep't of Commerce Mar. 25, 2019). Uttam Galva was a mandatory respondent in that administrative review. *Id.* Commerce found that a net countervailable subsidy rate existed for Uttam Galva for the period of November 6, 2015, to December 31, 2016. *Id.* Commerce applied AFA after determining that Uttam Galva failed to report its affiliation with Lloyds Steels Industries Limited ("LSIL")[1] as Commerce's questionnaire required.

Three questions on the questionnaire are relevant here. First, the questionnaire asked Uttam Galva to "identify all companies with which [it] is affiliated" according to any one of seven listed criteria.[2]   J.A. 238.   Second, it

---

[1]    Two similarly named entities are relevant in this appeal: Lloyds *Steels* Industries Limited (i.e., LSIL) and Lloyds *Steel* Industries Limited ("Lloyds Steel"). Lloyds Steel is described *infra*.

[2]    The questionnaire states:

In accordance with section 771(33) of the [Tariff Act of 1930, as amended], affiliated companies include: (1) members of the same family, (2) any officer or director of an organization and such organization, (3) partners, (4) employers and their employees, and (5) *any person or organization directly or indirectly owning, controlling, or holding with power to vote, 5 percent or more of the outstanding voting stock or shares of any organization and such organization.*   In addition, affiliates include (6) any person who controls any other person and that person, or (7) any two persons who directly control, are controlled by, or are under common control with, any

requested that Uttam Galva "describe in detail the nature of the relationship between [Uttam Galva] and those companies listed in response" to the previous question and provided some exemplary details to include. J.A. 238–39. And third, it explained that Uttam Galva "must provide a complete questionnaire response for" its affiliated companies "where cross[-]ownership exist[ed] <u>and</u>" one of five criteria was met.[3] J.A. 239 (emphasis in original). The questionnaire stated that

> cross-ownership exists between two or more corporations where one corporation can use or direct the individual assets of the other corporation(s) in essentially the same ways it can use its own assets. *Normally, this standard will be met where there is a majority voting ownership interest between two corporations or through common ownership of two (or more) corporations.*

J.A. 239 (emphasis added).

---

> person. "Control" exists where one person is legally or operationally in a position to exercise restraint or direction over the other person.

J.A. 238 (emphasis added).

[3]   Those five criteria were: (1) "the cross-owned company produces the subject merchandise"; (2) "the cross-owned company is a holding company or a parent company (with its own operations) of your company"; (3) "the cross-owned company supplies an input product to you that is primarily dedicated to the production of the subject merchandise"; (4) "the cross-owned company has received a subsidy and transferred it to your company"; or (5) "the cross-owned company is not a producer or manufacturer but provides a good to your company." J.A. 239.

Uttam Galva disclosed Uttam Value Steels Limited ("Uttam Value"), among others, as an affiliated, cross-owned company that required its own questionnaire response. J.A. 6664. Uttam Value's response indicated that it was formerly known as Lloyds Steel and that, during the review period, its controlling shareholders were First India Infrastructure Private Limited ("FIIPL") and Metallurgical Engineering and Equipment Limited ("MEEL"). J.A. 6665. FIIPL and MEEL were controlled by the Miglani family, as was Uttam Galva. J.A. 6665–66.

While Uttam Galva disclosed its affiliation with Lloyds Steel via its disclosure of Uttam Value, neither Uttam Galva nor Uttam Value mentioned LSIL. Lloyds Steel and LSIL are now two separate companies but were once two divisions within a single company owned by the Gupta family. *See Uttam Galva Steels Ltd. v. United States*, 425 F. Supp. 3d 1366, 1369–70 (Ct. Int'l Trade 2020) ("*Uttam Galva I*"). The Gupta family sought to split the two divisions, with its Steel Division to be known as Lloyds Steel and its Engineering Division to be known as LSIL. *See id.* The Gupta family entered into an agreement with Uttam Value in which Uttam Value would initially acquire the entire company and later transfer the Engineering Division (i.e., LSIL) back to the Gupta family. *See* J.A. 147–48. However, during the period of Commerce's review, Uttam Value controlled *both* divisions. *See* J.A. 147. This means that Uttam Galva and Uttam Value, including Lloyds Steel and LSIL, were controlled by the Miglani family during the relevant period. Specifically, the Miglani family controlled 46.11 percent of LSIL's shares. *See* J.A. 149.

This is where the dispute begins. Due to Uttam Galva's failure to disclose an affiliation with LSIL through the Miglani family, Commerce found that AFA "[was] warranted in determining whether Uttam Galva and LSIL

[were] cross-owned" under 19 U.S.C. § 1677e(a)(2)(A)–(C)[4] and (b).[5]  J.A. 149.  Commerce then applied AFA to determine that Uttam Galva and LSIL were, at the relevant time, cross-owned and that LSIL had used all of the subsidy programs available to it.  Consistent with its cross-ownership determination, Commerce attributed LSIL's use of those subsidy programs to Uttam Galva.  J.A. 149.  Uttam Galva and LSIL's cross-ownership thus impacted Uttam Galva's final countervailable subsidy rate, which was initially assessed at a total rate of 588.43 percent based off of 70 programs.  *Uttam Galva I*, 425 F. Supp. 3d at 1372–73.

II

In the lifetime of this case, Uttam Galva has appealed to the Court of International Trade three times, each from a separate Commerce decision.[6]    Uttam Galva first

---

[4]    This provision provides that "[i]f . . . (2) an interested party . . . (A) withholds information that has been requested by [Commerce] . . ., (B) fails to provide such information by the deadlines for submission . . . or in the form and manner requested . . ., [or] (C) significantly impedes a[n investigation] proceeding . . ., [Commerce] shall . . . use the facts otherwise available in reaching the applicable    determination    under    this    subtitle." § 1677e(a)(2)(A)–(C).

[5]    Section 1677e(b) grants Commerce the discretion to "use an inference that is adverse to the interests of" "an interested party [that] has failed to cooperate by not acting to the best of its ability to comply with a request for information from" Commerce.

[6]    *Uttam Galva I*, 425 F. Supp. 3d 1366; *Uttam Galva Steels Ltd. v. United States*, 476 F. Supp. 3d 1387 (Ct. Int'l Trade 2020) ("*Uttam Galva II*"); *Uttam Galva Steels Ltd. v. United States*, 518 F. Supp. 3d 1333 (Ct. Int'l Trade 2021) ("*Uttam Galva III*").

appealed Commerce's Final Decision that assessed a total rate of 588.43 percent against Uttam Galva. Uttam Galva argued in relevant part that Commerce's assigned rate for the Market Access Initiative Program was not supported by the record and that four other programs were improperly assigned a rate since they were not in "the initial questionnaire or initiated as a part of the new subsidy allegations during the administrative review." *Uttam Galva I*, 425 F. Supp. 3d at 1373. Commerce requested a remand to reconsider the AFA rates for those five programs, and the Court of International Trade remanded accordingly. *Id.* at 1373–74.

On the first remand, Commerce decreased the assigned rate for the Market Access Initiative Program and removed the other four programs from its total rate calculation. J.A. 26–27. Uttam Galva appealed. In relevant part, Uttam Galva asserted two problems with Commerce's first remand decision. First, it challenged Commerce's AFA rate assignments to the remaining programs as inconsistent with Commerce's decision not to apply total AFA to JSW, a different mandatory respondent, that also failed to timely disclose a cross-owned affiliate but was subject to only partial AFA. *Uttam Galva II*, 476 F. Supp. 3d at 1390–92; *Uttam Galva III*, 518 F. Supp. 3d at 1336–37. Second, Uttam Galva contested Commerce's inclusion of 20 programs in its rate calculation because of Uttam Galva's affiliation with LSIL since there was evidence that LSIL could not have benefited from those programs. *Uttam Galva II*, 476 F. Supp. 3d at 1392–93. The Court of International Trade remanded as to Uttam Galva's first argument "so [that] Commerce may provide a reasoned explanation for the differences in its application of AFA to JSW and Uttam Galva, and, if appropriate, reconsider its application of AFA to Uttam Galva." *Id.* at 1392. But the Court of International Trade rejected Uttam Galva's second argument and sustained Commerce's decision to include the 20

disputed programs, determining that Commerce's decision was reasonable. *Id.* at 1392–93.

Commerce, on the second remand, explained that it applied total AFA to Uttam Galva but not to JSW because the circumstances of JSW's mistake by omission involved "mitigating factors." J.A. 76. For example, JSW corrected its own mistake, whereas Uttam Galva required direct prompting by Commerce. J.A. 76–78. Uttam Galva appealed to the Court of International Trade again and argued, in relevant part, that Commerce failed to offer a sufficient explanation for treating Uttam Galva and JSW differently in this case. *Uttam Galva III*, 518 F. Supp. 3d at 1338. The Court of International Trade sustained Commerce's second remand results since Commerce "provided a reasoned explanation" for distinguishing Uttam Galva's circumstances from those of JSW. *Id.* at 1341.

Uttam Galva now appeals to this court. It asserts (I) that Commerce's application of total AFA to Uttam Galva was error and (II) that Commerce's inclusion of 20 programs (the same ones contested in Uttam Galva's second appeal to the Court of International Trade) in Commerce's rate calculation was error. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## DISCUSSION

We review Commerce's determinations under the same standard of review as the Court of International Trade: we "uphold[] Commerce determinations that are supported 'by substantial evidence' . . . and otherwise 'in accordance with the law.'" *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1341 (Fed. Cir. 2016) (quoting 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1272 (Fed. Cir. 2012) (cleaned up). "[T]he informed opinion of the [Court of International Trade] . . . is nearly always the starting point of our analysis,"

although we review the Court of International Trade's decisions de novo. *Nan Ya*, 810 F.3d at 1341.

Uttam Galva presents two substantial-evidence questions on appeal. Uttam Galva first asserts that Commerce's determination that it impeded the proceeding is not supported by substantial evidence. Appellant's Br. 2. It next contends that Commerce's inclusion of 20 programs against Uttam Galva via its affiliation with LSIL is not supported by substantial evidence. *Id.* We disagree as to both arguments.

I

Uttam Galva first asserts that Commerce's decision to apply AFA is not supported by substantial evidence because Uttam Galva did not impede Commerce's proceedings.

We need not reach Uttam Galva's argument on the merits because Commerce found that Uttam Galva's failure to disclose its affiliation with LSIL warranted AFA under three independent standards—i.e., that Uttam Galva (1) "with[held] information . . . requested by [Commerce]," (2) "fail[ed] to provide [requested] information," and (3) "significantly impede[d]" the investigation proceeding. § 1677e(a)(2)(A)–(C); J.A. 149 (citing § 1677e(a)(2)(A)–(C)). Uttam Galva focuses on the third ground, but any one of Commerce's three determinations is sufficient to apply AFA if, as Uttam Galva does not separately dispute, the additional precondition stated in § 1677e(b) is also met. Uttam Galva admits that the Miglani family controlled it, Lloyds Steel, and LSIL during the period of review. J.A. 147–48. Although Uttam Galva attempts to contest that it cross-owned LSIL during that time, Commerce's questionnaire explained how cross-ownership is "[n]ormally . . . met where there is a majority voting ownership interest . . . or . . . common ownership of two (or more) corporations." J.A. 239. Moreover, Commerce's questionnaire separately requested information regarding affiliated

entities, which include "any person or organization directly or indirectly . . . controlling . . . 5 percent or more of the . . . shares of any organization *and such organization.*" J.A. 238 (emphasis added); *see also* J.A. 151–52. Commerce's determination that Uttam Galva "with[held]" information from or "fail[ed] to provide" information to Commerce regarding its affiliation and cross-ownership with LSIL is accordingly supported by substantial evidence. § 1677e(a)(2)(A)–(B).

## II

Uttam Galva contends that Commerce's inclusion of 20 programs in Uttam Galva's countervailing duty rate—by virtue of Uttam Galva's affiliation with LSIL—is not supported by substantial evidence. Uttam Galva argues that LSIL's financial statement contains information demonstrating that LSIL could not have used those programs and that Commerce did not properly evaluate this evidence in reaching its conclusion.

We disagree. The Court of International Trade also addressed this question and accurately summarized Commerce's consideration of this evidence:

> Commerce explained that it did not find the LSIL financial statement to provide a sufficiently reliable basis to conclude that LSIL could not have benefited from the 20 disputed programs, stating that the LSIL financial statement did not provide a definitive listing of LSIL's business activities or where LSIL conducted those business activities. . . . [A]nd . . . Commerce had no opportunity to pursue these lines of inquiry due to Uttam Galva's failure to fully cooperate.

*Uttam Galva II*, 476 F. Supp. 3d at 1393 (cleaned up). Like the Court of International Trade, we determine that Uttam Galva failed to demonstrate that LSIL's financial statement "could lead Commerce to reach one and only one

reasonable outcome on this administrative record, namely that LSIL could not have benefit[]ed from the 20 disputed programs." *Id.* (cleaned up).  We therefore conclude that Commerce's inclusion of the 20 disputed programs is supported by substantial evidence.

## CONCLUSION

We have considered the parties' remaining arguments but find them unpersuasive.  For the foregoing reasons, we affirm with respect to the issues raised by Uttam Galva.

## **AFFIRMED**