# United States Court of Appeals for the Federal Circuit

---

**HABAS SINAI VE TIBBI GAZLAR ISTIHSAL ENDUSTRISI A.S.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES, REBAR TRADE ACTION COALITION,**
*Defendants-Appellees*

---

2020-1506

---

Appeal from the United States Court of International Trade in Nos. 1:17-cv-00202-LMG, 1:17-cv-00203-LMG, Senior Judge Leo M. Gordon.

---

Decided: March 30, 2021

---

DAVID L. SIMON, Law Offices of David L. Simon, Washington, DC, argued for plaintiff-appellant.

MARGARET JANTZEN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States. Also represented by JEFFREY B. CLARK, JEANNE DAVIDSON, LOREN MISHA PREHEIM; REZA KARAMLOO, Office of the Chief Counsel for Trade Enforcement & Compliance, United States Department of Commerce, Washington, DC.

JOHN R. SHANE, Wiley Rein, LLP, Washington, DC, argued for defendant-appellee Rebar Trade Action Coalition. Also represented by STEPHANIE MANAKER BELL, LAURA EL-SABAAWI, JEFFREY OWEN FRANK, CYNTHIA CRISTINA GALVEZ, ALAN H. PRICE, MAUREEN E. THORSON.

———————————

Before NEWMAN, REYNA, and STOLL, *Circuit Judges*.

REYNA, *Circuit Judge*.

Habas Sinai Ve Tibbi Gazlar Istihsal Endustrisi A.S. appeals the decision of the U.S. Court of International Trade that affirms the U.S. Department of Commerce's final affirmative determination imposing a 14.01 percent countervailing duty on imports of certain steel concrete reinforcement bar from the Republic of Turkey. Because Habas has not shown that Commerce exceeded its statutory authority in the selection of the 14.01 countervailing duty rate, we affirm.

BACKGROUND

On September 20, 2016, the Rebar Trade Action Coalition ("Coalition") submitted a petition to the U.S. Department of Commerce ("Commerce") requesting the initiation of a countervailing duty ("CVD") investigation on imports of certain reinforcement bar ("rebar") imported from Turkey. *See* Steel Concrete Reinforcing Bar From the Republic of Turkey: Initiation of Countervailing Duty Investigation, 81 Fed. Reg. 71,705 (Oct. 18, 2016); J.A. 17. The Coalition alleged that the Turkish government provided countervailable subsidies to Turkish companies that manufactured, produced, or exported rebar from Turkey to the United States, and that those subsidies were causing material injury to the United States rebar industry. *See* 81 Fed. Reg. at 71,705–06; J.A. 17–18.

On October 18, 2016, Commerce initiated a CVD investigation on U.S. imports of rebar from Turkey. *See* 81 Fed. Reg. at 71,705–09; J.A. 17–21. Commerce issued CVD questionnaires to the Turkish government and to Habas Sinai Ve Tibbi Gazlar Istihsal Endustrisi A.S. ("Habas"), the sole respondent subject to the investigation. The questionnaire broadly inquired about benefits the Turkish government extended to Habas during the period of investigation. *See* J.A. 22–36.

In its questionnaire response, Habas did not disclose that it received benefits via a duty drawback program implemented under Article 22 of Turkey's Domestic Processing Regime (RDP) Resolution 2005/8391 ("duty drawback program").[1] J.A. 6, 37–88. Under this duty drawback program, the Turkish government granted incentives, including "inward processing permits," to Turkish manufacturers and exporters. J.A. 94. During Commerce's verification of Habas's questionnaire response, Habas revealed that it held a permit under the program and therefore occasionally benefitted from import duty drawbacks for billets and ferroalloys, raw materials used to make rebar. J.A. 94, 125, 129. Habas informed Commerce that it had no obligation to disclose the duty drawback program in its questionnaire response because Commerce had previously, in an investigation on circular welded carbon steel pipes and tubes from Turkey, determined that benefits under the duty drawback program were not countervailable. J.A. 129–30 (citing Circular Welded Carbon Steel Pipes and Tubes From Turkey: Preliminary Results of Countervailing Duty Administrative Review; Calendar Year 2015, 82 Fed. Reg. 16,994 (Apr. 7, 2017)). Habas also asserted

---

[1] Generally, a duty drawback is a rebate of import duties paid on imported goods (or components or raw materials) that are subsequently exported in whole or finished form. 19 U.S.C. § 1313.

that the questionnaire did not specifically inquire about the program.  J.A. 130.

On May 15, 2017, Commerce issued a final affirmative CVD determination.  J.A. 123.  Commerce imposed a CVD rate of 14.01 percent *ad valorem* on Habas's imports of rebar from Turkey.  J.A. 133.  Commerce faulted Habas for not reporting benefits received from the duty drawback program.  Specifically, Commerce found that Habas failed to cooperate with Commerce's investigation, as required by 19 U.S.C. § 1677e(b), when it failed to timely report receipt of benefits under the duty drawback program.  J.A. 125–33.  Commerce determined that Habas's failure to disclose that information impeded the CVD investigation, including by preventing Commerce from issuing a supplemental questionnaire directed to whether the program constitutes a financial contribution conferring a benefit upon Habas, as required to establish a countervailable subsidy under 19 U.S.C. §§ 1677(5)(B), -(E).  J.A. 132–33.  Commerce determined that it was appropriate to draw an adverse inference that those requirements were met and to apply a CVD rate based on "facts otherwise available" under 19 U.S.C. § 1677e.  J.A. 132–33.

Commerce used its established hierarchy as a guide to determine the applicable CVD rate based on facts otherwise available.  19 U.S.C. § 1677e(d)(1)(A); J.A. 133.  Specifically, Commerce selected a CVD rate from the following order of preference: (1) the highest calculated rate for the identical subsidy program in the investigation if a responding company used the identical program and the rate is not zero; (2) the highest non-*de minimis* rate calculated for the identical program in a countervailing duty proceeding involving the same country; (3) the highest non-*de minimis* rate for a similar program, based on treatment of the benefit, in another countervailing duty proceeding involving the same country; (4) the highest calculated subsidy rate for any program otherwise identified in a countervailing

duty case involving the same country that could conceivably be used by the non-cooperating companies.  J.A. 133.

Commerce found that the first two options in its hierarchy did not apply.  Turning to the third option, Commerce selected a countervailing duty rate of 14.01 percent *ad valorem*, reasoning that it had applied that rate with respect to an export tax rebate program in a 1986 CVD investigation on "Welded Pipe and Tube from Turkey."  *Id.* & n.208 (citing Final Affirmative Countervailing Duty Determinations; Certain Welded Carbon Steel Pipe and Tube Products from Turkey, 51 Fed. Reg. 1268 (Jan. 10, 1986) [hereinafter *Welded Pipe and Tube*]).  Commerce thus selected the 14.01 percent *ad valorem* rate as facts otherwise available on the basis that it was the highest rate for a similar program in a countervailing duty proceeding involving Turkey.  J.A. 133.

Commerce is required under the statute to corroborate, "to the extent practicable," any rate that it relies on as best information available.  19 U.S.C. § 1677e(c).  Here, Commerce explained that the 14.01 percent rate was a rate established in the course of a prior CVD investigation that involved a tariff rebate program similar to the duty drawback program in the underlying investigation, from which it determined Habas had benefited.  J.A. 133–34.  On that basis, Commerce concluded that the 14.01 percent rate was both relevant and reliable.  J.A. 134.

Habas appealed Commerce's final affirmative determination to the Court of International Trade ("Trade Court").  *See Rebar Trade Action Coal. v. United States*, 389 F. Supp. 3d 1371 (Ct. Int'l Trade 2019).  As relevant to this appeal, Habas argued that, even if Commerce was justified in using "facts otherwise available" to select a CVD rate, Commerce's selection of the 14.01 percent rate was unreasonable because it was not adequately corroborated by the 1986 *Welded Pipe and Tube* investigation.  *Id.* at 1379.  The Trade Court rejected Habas's argument,

finding that it was Habas's failure to timely disclose the duty drawback program from which it benefitted that led Commerce to apply facts otherwise available. *Id.* The Trade Court further reasoned that, because the statute requires that a rate selected from facts otherwise available must be "corroborated to the extent practicable," Commerce has "broad discretion" to follow its established hierarchy and ultimately select a rate that had been applied for the same or similar program in a CVD program involving the same country. *Id.* Concluding that Commerce did not exceed its statutory discretion, the Trade Court affirmed Commerce's final affirmative determination. *Id.* at 1379–80, 1384. Habas appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## STANDARD OF REVIEW

We review Trade Court decisions involving Commerce countervailing duty determinations on a de novo basis. In doing so, we apply the same standard of review applied by Trade Court in its review of Commerce's CVD investigations. *Saha Thai Steel Pipe (Public) Co. v. United States,* 635 F.3d 1335, 1340 (Fed. Cir. 2011). Under the applicable standard, we will uphold a Commerce determination unless it is unsupported by substantial evidence on the record, or is otherwise not in accordance with law. *Id.*; 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

Generally, countervailing duty investigations are undertaken by Commerce to determine whether a foreign government has conferred to its producers benefits that are deemed to be countervailable subsidies. *See* 19 U.S.C. §§ 1671, 1677. A countervailable subsidy is defined to include certain types of financial assistance provided by a foreign government or entity that confers a "benefit" to the recipient relating to its production, manufacture, or export of the subject goods. *See* 19 U.S.C. §§ 1677(5), 1677(5A);

*POSCO v. United States*, 977 F.3d 1369, 1371 (Fed. Cir. 2020).

A foreign producer subject to a countervailing duty investigation, i.e., a respondent, must comply, to the best of its ability, with Commerce's requests for information. *See* 19 U.S.C. § 1677e(b). Relevant to this appeal, a respondent must "put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation. While the standard does not require perfection and recognizes that mistakes sometimes occur, it does not condone inattentiveness, carelessness, or inadequate record keeping." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003). If the interested party withholds information sought by Commerce, then Commerce may draw an adverse inference from the party's failure to comply. 19 U.S.C. § 1677e(a)–(b). The risk of an adverse inference is intended to incentivize cooperation with Commerce's investigations. *See Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1348 (Fed. Cir. 2016) ("Commerce's consideration of the deterrent effect of its determination reflects the law's expectation."); *Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1276 (Fed. Cir. 2012); *F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000); Statement of Administrative Action accompanying the Uruguay Round Agreements Act ("SAA"), H.R. REP. NO. 103-316, vol. 1, at 870, *as* re*printed in* 1994 U.S.C.C.A.N. 4040, 4199.

Commerce may use an adverse inference "in selecting from among the facts otherwise available." 19 U.S.C. § 1677e(b)(1). Potential sources of information for adverse inferences include the petition, the final determination in the investigation, any previous administrative review, or any other information placed on the record. *See id.* § 1677e(b)(2); 19 C.F.R. § 351.308(c). To the extent Commerce relies on information outside what it obtained during its investigation, Commerce must, "to the extent practicable, corroborate that information from

independent sources that are reasonably at their disposal." 19 U.S.C. § 1677e(c)(1).

In a case where Commerce has drawn an adverse inference, Commerce may

> (i) use a countervailable subsidy rate applied for the same or similar program in a countervailing duty proceeding involving the same country; or

> (ii) if there is no same or similar program, use a countervailable subsidy rate for a subsidy program from a proceeding that the administering authority considers reasonable to use.

19 U.S.C. § 1677e(d)(1)(A). Commerce has discretion, in such cases, to apply any rate falling into these categories, "including the highest such rate," as appropriate depending on the facts that gave rise to the adverse inference. *Id.* § 1677e(d)(2). Commerce is not required to select a rate that reflects the investigated party's commercial reality, nor must Commerce estimate the rate that would have applied had the investigated party cooperated. *Id.* § 1677e(d)(3).

Against this backdrop, we turn to Habas's arguments on appeal. Habas "only appeals Commerce's selection of [the 14.01 percent rate]," and explains that the "gravamen" of its arguments on appeal is that Commerce erred in adopting the 14.01 percent rate because it is not an adequately corroborated rate. Appellant's Br. 8. According to Habas, the drawback program investigated in *Welded Pipe and Tube* was in effect over thirty years ago and was terminated in 1987, making any relationship between the 1986 program and modern economic conditions too tenuous, and the 14.01 percent rate too stale, to meet the corroboration requirement. *Id.* at 8–9. In other words, Habas argues that Commerce should be permitted to apply Turkey's tax rebate programs only to the extent it determines they "could conceivably have benefitted Habas in 2015."

*Id.* at 22. Habas argues that a thirty-five-year-old rate cannot be deemed "corroborated" under the statute, and that the CVD determination is therefore not supported by substantial evidence and is otherwise contrary to law. We disagree.

Habas overlooks the context of Commerce's analysis, which is that Commerce resorted to facts otherwise available because Habas, as it concedes, failed to disclose the duty drawback program from which it benefitted. When an interested party withholds requested information in a CVD investigation, as Habas did here, Commerce has statutory latitude to draw adverse inferences concerning the withheld information and resort to "facts otherwise available" to select a countervailing duty rate. *See* 19 U.S.C. § 1677e. Habas does not explain how Commerce exceeded that statutory authority in this case. Nor does Habas challenge as contrary to law Commerce's established hierarchy for selecting a countervailing duty rate based on "facts otherwise available."

If accepted, Habas's arguments would have this court impose on Commerce an obligation that is not supported by the statute, namely to use only "facts otherwise available" that reflect the commercial reality of the affected party or that bends to the benefit of the affected party. *See* 19 U.S.C. § 1677e(d)(3). Such a requirement would be impossible to apply where the respondent cannot or refuses to provide the very required information intended to inform Commerce of a respondent's commercial reality in the context of a CVD investigation, including that it has benefitted from a countervailable subsidy. Even accepting Habas's argument that the *Welded Pipe and Tube* determination is now "stale" and unrelated to present commercial realities, this does not necessarily mean that Commerce's selection of the 14.01 percent rate was contrary to law. Once a party withholds information requested by Commerce, it invites Commerce to rely on information that is not limited to the information obtained in the course of the investigation.

The statute requires Commerce to corroborate secondary information not perfectly, but "to the extent practicable." *See id.* § 1677e(c)(1). Habas has not shown that Commerce acted contrary to that statutory requirement.

Commerce's use of the 14.01 percent rate is consistent with the overall statutory regime. Congress explained, when discussing the legislative purpose of § 1677e, that Commerce "may employ adverse inferences about the missing information to ensure that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully." *Nan Ya Plastics*, 810 F.3d at 1348 (quoting SAA, 1994 U.S.C.C.A.N. 4040, 4199). In light of Congress's desire that Commerce guard against incentivizing non-cooperation with Commerce's investigations, Commerce was justified in selecting a rate that, in its considered discretion, would deter future non-cooperation and avoid rewarding Habas (and other would-be respondents) for further non-cooperation by promoting a rate lower than it would have received had it disclosed the duty drawback program. Although the origin of 14.01 percent rate may relate to a CVD determination from decades ago, Habas does not address why the rate unreasonably departs from § 1677e. Absent such a showing, and based on the record before us, we conclude that Commerce's selection of the 14.01 percent CVD rate is not contrary to law and is supported by substantial evidence. We therefore affirm the Trade Court's decision sustaining Commerce's determination.

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. For the reasons set forth above, the Trade Court's decision is affirmed.

**AFFIRMED**