**Slip Op. 24-11**

# UNITED STATES
# COURT OF INTERNATIONAL TRADE

─────────────

**Court No. 20-00008**

─────────────

NEW AMERICAN KEG, d/b/a
AMERICAN KEG COMPANY,

*Plaintiff*,

v.

UNITED STATES,

*Defendant*,

and

NINGBO MASTER INTERNATIONAL
TRADE CO., LTD., AND GUANGZHOU
JINGYE MACHINERY CO, LTD.,

*Defendant-Intervenors.*

─────────────

Before: M. Miller Baker, Judge

## OPINION

[The court again remands to Commerce for further proceedings.]

Dated: January 31, 2024

*Whitney M. Rolig*, *Andrew W. Kentz*, and *Nathaniel Maandig Rickard*, Picard Kentz & Rowe LLP of Washington, DC, on the comments for Plaintiff.

*Brian M. Boynton*, Principal Deputy Assistant Attorney General; *Patricia M. McCarthy*, Director; and *Ashley Akers*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, DC, on the comments for Defendant. Of counsel on the comments was *Vania Wang*, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce of Washington, DC.

*Gregory S. Menegaz* and *Alexandra H. Salzman*, deKieffer & Horgan, PLLC, of Washington, DC, on the comments for Defendant-Intervenors.

*Baker*, Judge: This antidumping case involving beer kegs imported from China returns for a third time.[1] In its most recent decision, the court remanded for the Department of Commerce to explain why it used a Mexican wage rate adjusted with Brazilian inflation data rather than employing the latter country's rate to calculate a surrogate labor costs value for Chinese producer and mandatory respondent, Ningbo Master. *See Am. Keg II*, Slip Op. 22–106, at 9, 2022 WL 4363320, at *3. The court also directed the agency to identify the evidence supporting a separate rate for Ulix, another Chinese producer. *See id.*

---

[1] The court presumes the reader's familiarity with its two previous opinions in this matter. *See New Am. Keg v. United States*, Ct. No. 20-00008, Slip Op. 21-30, 2021 WL 1206153 (CIT Mar. 23, 2021) (*Am. Keg I*); *New Am. Keg v. United States*, Ct. No. 20-00008, Slip Op. 22-106, 2022 WL 4363320 (CIT Sept. 13, 2022) (*Am. Keg II*).

After reexamining the issue, Commerce acknowledged that adjusting Mexican wage rates with Brazilian inflation data was "improper." Appx4430. The Department nevertheless rebuffed domestic producer American Keg's request to use Brazilian information because unlike that country, which only makes comparable products, Mexico produces "identical" steel kegs. *Id.* Instead, the agency reopened the record and used a different data set for Mexico—one that was contemporaneous with the period of review. Appx4430–4431.[2] It also identified evidence on the record that it characterized as justifying a separate rate for Ulix. Appx4431–4434.

I

American Keg contests Commerce's decision to reopen the record and use new Mexican wage rate data rather than the Brazilian statistics provided by the parties. The company argues the Department abused its discretion because contrary to the latter's stated rationale, *see* Appx4435–4436, informational accuracy did not require any such reopening, and the agency

---

[2] In its prior determination, the Department used non-contemporaneous Mexican wage rates from the Conference Board's International Labor Comparisons (ILC) that the parties placed on the record. Appx1469. On remand, Commerce placed on the record contemporaneous Mexican wage data from the International Labour Organization (ILO). Appx4430–4431. The Department prefers to use ILO data. *See* Appx4431 (citing *Antidumping Methodologies in Proceedings Involving Non-Market Economies: Valuing the Factor of Production: Labor*, 76 Fed. Reg. 36,092 (Dep't Commerce June 21, 2011)).

disregarded its general policy of relying on the litigants to create the record.

The court agrees. To begin with, "a Commerce determination . . . is 'accurate' if it is correct as a mathematical and factual matter . . . ." *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1344 (Fed. Cir. 2016). It's undisputed that the Brazilian information on the record *was* correct as a factual matter—indeed, the Department so found in its draft redetermination results. Appx1006. The agency's reopening the record because of a purported need for accurate data is not supported by substantial evidence.

Insofar as the Department reopened the record because of its preference for data from countries that produce identical, as opposed to merely comparable, goods, that reopening was arbitrary and capricious for two related reasons. First, Commerce uses figures from countries that produce comparable products when there are "data difficulties" with countries that produce identical products. Import Administration Policy Bulletin 04.1, *Non-Market Economy Surrogate Country Selection Process*, at 2 n.6 (Mar. 1, 2004). On the record created by the parties, there were data difficulties with the Mexican ILC wage data because it lacked an inflation adjustor, but there was no such difficulty with the Brazilian information.

Second, "the burden of creating an adequate record lies with interested parties and not with Commerce." *QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011) (brackets omitted). To that end, regulations provide that "[t]he Department obtains most of

its factual information in antidumping . . . duty proceedings from submissions by interested parties during the course of the proceeding." 19 C.F.R. § 351.301(a). Thus, "Commerce generally does not consider untimely filed factual information." *Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1278 (Fed. Cir. 2012) (citing 19 C.F.R. § 351.302(d)(1)). Nor does the agency reopen the record to admit evidence that it prefers, such as ILO data, when the parties have introduced otherwise-acceptable evidence that allows an accurate margin calculation. *See, e.g.*, *Multilayered Wood Flooring from the People's Republic of China*, 85 Fed. Reg. 78,118 (Dep't Commerce Dec. 3, 2020) and accompanying I&D Memo at 12 (selecting between two non-ILO sources placed on the record by interested parties and explaining that "[a]lthough Commerce stated a preference for ILO data, it did not preclude reliance on data from another source").

As "[c]onstant reopening and supplementation of the record would lead to inefficiency and delay in finality," *Essar*, 678 F.3d at 1277, supplementation is permissible in "a small number of" circumstances. *Id.* One such circumstance is "when the underlying agency decision was based on 'inaccurate data' . . . ." *Id.* Because the Department made no showing that the Brazilian wage information on the record was inaccurate or otherwise unsuitable for calculation of Ningbo Master's

margin, Commerce abused its discretion in reopening the record to use Mexican ILO wage data.[3]

## II

To qualify for separate-rate status, an applicant must provide evidence of sales to an unaffiliated U.S. customer. *See Am. Keg I*, Slip Op. 21–30, at 45, 2021 WL 1206153, at *17. The government acknowledges that because of the undisputed affiliation between Company A (an American company) and Ulix's U.S. customer, if Ulix and Company A were affiliated, "that would mean [Ulix] and its U.S. customer . . . were affiliated." ECF 90, at 32. In its previous decision, the court therefore remanded for the Department to identify evidence on the record that Company A and Ulix were unaffiliated. *Am. Keg II*, Slip Op. 22-106, at 8–9, 2022 WL 4363320, at *3.

Commerce complied by pointing to various parts of the record, including Ulix's separate-rate application, which represented that the company was not affiliated with any U.S. entity. Appx4432. The Department also cited the fact that the list of Ulix's shareholders did not overlap with the owner of Company A. *Id.* Although American Keg challenges the sufficiency of

---

[3] The court acknowledges that it previously declined American Keg's invitation to preemptively bar the Department from reopening the record on remand because the company failed to identify "any authority for the court to so limit the Department's discretion." *Am. Keg II*, Slip Op. 22-106, at 6 n.3, 2022 WL 4363320, at *2 n.3. Whether the agency abused that discretion is a different question, and one within the court's purview.

that evidence, reweighing the record is not for the court. Substantial evidence supports the agency's remand determination that Ulix is eligible for a separate rate.

*   *   *

The court remands for further proceedings consistent with this opinion.

Dated: January 31, 2024      /s/ *M. Miller Baker*
      New York, NY      Judge